Ross H. Peterson, Jr., appellee, v. Borden's Produce Company, Inc., appellant.

Filed October 11, 1933. No. 28857.

*Hutton & Mueting,* for appellant.

*Webb Rice, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Day and Paine, JJ., and Shepherd, District Judge.

Shepherd, District Judge.

This is a compensation case from Madison county where it was tried upon appeal from the order of the compensation commissioner. The plaintiff-appellee prevailed in the district court and was found to have been temporarily totally disabled for a period of 300 weeks from and after July 10, 1932. He was awarded compensation at the rate of $14 a week, together with costs, an attorney fee of $500, and medical and hospital expenses aggregating $181.70.

The appellant presents eight specific assignments of

error, which may be grouped in three, as follows: (1) The findings and decree are contrary to the evidence, contrary to the law, and not supported by preponderance of the evidence. (2) The court erred in rendering a judgment for compensation which, running concurrently with the compensation of a prior judgment, allows the plaintiff to recover a weekly compensation in excess of the amount permitted by statute. (3) The attorney fee is excessive.

One of the facts of the record, undisputed in the evidence, is that on the 17th day of March, 1930, appellee had an earlier automobile accident involving injury to his back, ribs and trunk, which was quite similar to the one in question. In that case he was given compensation at $15 a week for total temporary disability to June 8, 1931, and compensation at the rate of $7.4666 a week for permanent partial disability for 236 weeks thereafter. Since in the case presently before the court appellee is adjudged to receive compensation at $14 a week for a period of 300 weeks of temporary total disability, it is clear that the two awards overlap and that appellee will be receiving, if the instant decree stands, $21.4666 a week for a period of 179-3/7 weeks.

Under the statute such compensation in excess of $15 a week cannot be had. While a workman may receive concurrent compensation for two or more injuries, the combined amounts received may not exceed $15 a week. Comp. St. 1929, sec. 48-121; *Nelson v. Service Oil Co.,* 121 Neb. 762. It is also the law that a commuted award extends over the full period of its original coverture. *O'Brien v. Albrecht Co.,* 206 Mich. 101; *Diskon v. Bubb,* 88 N. J. Law, 513.

The two judgments in the two Peterson compensation cases are in conflict as to whether permanent partial disability arose from his first accident. The court sitting at Hastings found that it did and placed it at 40 per cent. The court sitting at Madison in the case at bar found that total disability arose from his second accident.

Apparently the last finding belies the first. No doubt the court in the last case, the case now before us, concluded, even though the appellee was then enjoying the fruits of the first finding upon the matter, that he had fully recovered from the results of his first accident and that said finding was mistaken or ill-advised. But the judgment of the first case was in evidence to the contrary and must be regarded as an evidence of high order, unmodified, unquestioned and affirmed in commutation proceedings as it was. If the finding of the court in this case is correct, the first employer of the appellee has been woefully despoiled. In the interest of common fairness the rule ought to be that a workman who receives compensation for a permanent disability should be precluded from ever thereafter applying for or receiving a subsequent award for total temporary disability resulting from a later injury; for the administration of justice in compensation cases is indeed plagued by litigants who are prone to look upon every accident as a business opportunity. However, the rule suggested is probably for the legislature and not for the court. It will not be applied here.

We do not agree with the court below in its determination that the accident happened as alleged or that the injury of the appellee, if any, was compensable. Trying the case *de novo,* as we are required to do by the recently amended statute, section 48-137, Comp. St. 1929, we conclude to the contrary. The old doctrine to the effect that compensation judgments will not be disturbed if supported by competent evidence, however meagre or unconvincing, is no longer in force, and it now devolves upon the reviewing court to make independent findings and to decree accordingly. The appellee did not prove his case by a preponderance of the evidence, as was requisite to a judgment for compensation in his favor.

Peterson's account of his alleged accident is that on the 10th of July, 1932, he was driving a milk truck, weighing with its load about 7,200 pounds, and going south toward

the town of Osmond at the rate of 30 or 35 miles an hour; that he fell asleep in his cab and that the truck turned into the ditch on his right, throwing him out to the left and running over his left chest and shoulder by the outer member of its dual left rear wheel as it mounted the bank beyond, and going on at an angle of approximately 45 degrees through a barbed wire fence and over rises and depressions into a stubble field to a point perhaps forty rods from the road; that appellee was unconscious for some moments from the impact he had received, but finally came to, staggered into the field to the truck, climbed in, turned it around and drove it back in the very tracks which it had made in its runaway journey, recrossed the ditch and emerged upon the road at the exact spot where the truck had left it; and that thereafter he immediately drove on to the Kumm farm where he fainted and was revived, and then provided with conveyance and company to Osmond to consult a doctor. He saw Dr. Mailliard there, who gave him an examination and treated him. Following this he was taken to the Good Samaritan Hospital at Wayne where he remained five days and was discharged as perfectly normal. He insists that his injury brought on tuberculosis and that he is entitled to the total temporary disability finding made and to the compensation awarded.

No one witnessed the alleged accident and the physical facts considerably dispute Peterson's version of the manner in which it occurred. According to the testimony of the witness Tubel, who examined the tracks immediately after, the imprint of the left rear wheel was plain in the soil all the way through the ditch with nothing in its course to show that it had passed over any obstacle. His testimony was: "The tracks were perfectly smooth without any interruption." If the wheel had gone over his chest and shoulder at any point there must have been a break in the continuity of that imprint. It is almost impossible to explain how the wheel could have hit him. By the law of mechanics the turn of the truck would

throw him out of the course in which it was proceeding and away from it. The loaded truck was of great weight and going at a high rate of speed. Had it passed over his chest and shoulder it must have crushed him, or produced objective symptoms far beyond those described by any witness. Appellee declared that the truck "eased" off into the ditch; Ed Schad testified that it went in almost at right angles. Appellee testified that he returned to the road at the point where he left it. The testimony of Tubel is that on his return he drove south in the ditch a considerable distance to a place of easier access.

The alleged accident happened in a cup between two comparatively high hills which shut out all observation. Before it took place Peterson had passed and repassed the place three times. In his examination before the compensation commissioner he first denied the fact that he had turned and driven back through this cup or depression and then turned and gone into it again to his alleged accident. True, he explains this on the plea that he had become confused about the road to Osmond. In his former accident he had suffered an injury to his chest and back and two or three broken ribs. He was fully advised as to the possibility of tuberculosis from trauma.

At all times following the occurrence the appellee stated that he suffered great pain. He was bleeding at the nose and his left hand was scratched and bloody. He was covered with dirt and much dishevelled, but when he stripped in Dr. Mailliard's office no further marks appeared, save a slight bruise on the chest. The doctor first thought he had sustained a broken left rib and strapped him with surgeon's tape. He was X-rayed at the hospital. He had no injury to his sternum, no dislocations, no broken bones, except a hair line fracture of his rib. Over and over again he complained of pain, hemorrhages, coughing, etc., and expressed fear that he was going into consumption. But no doctor or person, outside of the appellee's family, ever witnessed any of these symptoms. The numerous X-rays show nothing of the sort.

In view of the medical testimony respecting his condition after the alleged accident, it is almost without doubt that his injury did not bring on consumption and that he did not have it. In this particular the burden was upon him to show by competent and convincing evidence, amounting to a preponderance of the evidence, that tuberculosis resulted. From every point of view the testimony of his employer outweighed and overbalanced the evidence which he presented. Just one medical witness, Dr. Stark, maintained through cross-examination that his injury had superinduced a tubercular condition. He said, "I think the man is tubercular." All of the further testimony on this point, carefully examined in the bill of exceptions and faithfully abstracted in appellant's brief, is to the effect that there was no convincing indication upon medical and surgical examination of the existence of tuberculosis within a period of six months from the time that his injury was received, and that had it existed examination would have disclosed it within that period.

The record shows that upon trial of the case the appellant offered to pay wages and medical and hospital expenses from July 10 to July 15; and that said offer was refused. Awards of compensation are not to be had on speculation, conjecture, possibility, or even probability. There must be proof that the accident occurred, and proof that the complainant suffered a compensable injury. The evidence will not be quoted further. A most painstaking examination has been made, however, of the bill of exceptions and pleadings.

The appellee has entirely failed to prove the allegations of the petition or to make a case for compensation. It follows that the judgment of the lower court should be reversed and the case dismissed, and it is so ordered.

REVERSED AND DISMISSED.