## METROPOLITAN DINING ROOM, APPELLEE, V. CLAUSINE JENSEN, APPELLANT.

FILED APRIL 20, 1934. No. 29115.

*Dorsey & Baldrige*, for appellant.

*Dressler & Neely, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Day and Paine, JJ., and Redick, District Judge.

Day, J.

In 1924, Clausine Jensen, an employee of the Metropolitan Dining Room in Omaha, was injured and was awarded compensation by the district court for Douglas county, under the provisions of the workmen's compensation act, for permanent total disability, the sum of $10.67 a week for 300 weeks and $7.20 a week thereafter for the remainder of her life or until disability shall end. This suit was brought by the employer, in 1932, to modify the award on the ground that the disability due solely to the injury no longer exists. The employer alleged that Mrs. Jensen was no longer disabled as a result of the accident, while Mrs. Jensen denied the allegation and asked that back payments, plus interest and statutory penalty, be decreed. The trial court entered a judgment that the employer and the insurance carrier be relieved of further liability.

An award of compensation for permanent disability made by order of the district court under the provisions of the employers' liability act is final except that it may be modified upon the application of either party to that court any time after six months on the ground of decrease or increase of disability due solely to the injury resulting from the accident. Comp. St. 1929, sec. 48-142; *Updike Grain Co. v. Swanson*, 103 Neb. 872.

In a suit to modify an award for permanent total disability because of increase or decrease of incapacity due solely to injury, the same procedure shall be followed as provided in cases of dispute except that, after district court has entered order, the application shall be made to that court. Comp. St. 1929, sec. 48-142.

Most of the compensation statutes provide for a modification of an award upon the ground that it should be increased or decreased if the disability has changed or upon the ground of mistake. 2 Schneider, Workmen's Compensation Law (2d ed.) sec. 552.

In this case, the judgment awarding compensation is final and cannot be modified or vacated except as provided either by the compensation statutes or statutes relating to civil procedure. In fine, all matters are excluded from the consideration of the court upon an application to modify the decree except to determine the increase or decrease of disability due solely to the injury. Compensation cases cannot be tried over and over again on the issues of the existence of an accident resulting in an injury causing disability. If the injured employee has recovered from the injury or the disability resulting has increased or decreased, then the compensation act provides for vacation or modification.

This case presents to this court the determination from the evidence as to increase or decrease since June, 1924, of the employee's disability due solely to the injury, in May, 1932. A compensation case appealed from the district court will be tried in the supreme court *de novo* upon the record. Comp. St. 1929, sec. 48-137; *Travelers Ins. Co. v. Ohler*, 119 Neb. 121; *Peterson v. Borden's Produce Co.*, 125 Neb. 404.

A "trial *de novo*" in the supreme court means that the case will be tried on the same pleadings and evidence on which it was tried in district court. *Guaranty Fund Commission v. Teichmeier*, 119 Neb. 387.

Black's Law Dictionary defines trial *de novo* as "a new trial or retrial had in an appellate court in which the whole case is gone into as if no trial whatever had been had in the court below."

Mistake is not a ground provided by Nebraska workmen's compensation statutes to modify a final award of compensation. The judgment is final except that after six months it may be modified upon application of either party, for increase or decrease of disability, or for other reasons, such as death or marriage of defendants. Appeals from such judgment shall be prosecuted in accordance with general laws of the state except as provided by the

workmen's compensation statutes. Comp. St. 1929, sec. 48-139; *Lincoln Packing Co. v. Coe,* 120 Neb. 299.

To vacate a judgment awarding compensation after term for any reason not especially provided by the law in such cases, the procedure is that applicable in civil cases, as prescribed by article 20, ch. 20, Comp. St. 1929. If the mistake amounted to fraud, a court of equity could afford relief where petitioner, in the exercise of reasonable diligence, did not discover evidence of the fraud within time to avail himself of the statutory proceeding to vacate such a judgment. *Krause v. Long,* 109 Neb. 846.

In compensation cases the employee has the burden to establish that his disability was caused by accident arising out of and in the course of his employment. *Pensick v. Boehm,* 124 Neb. 28; *Bartlett v. Eaton,* 123 Neb. 599; *Saxton v. Sinclair Refining Co.,* 125 Neb. 468. But this rule is not applicable to a petition to modify an award after six months. The award being final upon all questions except extent of disability, the employee is not required to again prove that he was injured in an accident arising out of and in the course of his employment. Upon an application to modify an award under the workmen's compensation statutes, the burden of proof rests upon the petitioner to establish by a preponderance of the evidence that the disability has increased or decreased or terminated. Unless the condition has changed, there is no reason why the award should be modified. *Southern Surety Co. v. Parmely,* 121 Neb. 146; *Ex parte George C. Brown & Co.,* 211 Ala. 530.

In the present trial medical experts testified for both plaintiff and defendant. Two reputable physicians testified for the plaintiff. One, Dr. Pulver, testified that at the first examination Mrs. Jensen claimed to have slipped and fallen backwards on her shoulders and head—head first; that at the time it appeared to him that she had a general shaking up; that the X-rays taken at the time were all negative and there were no objective symptoms of injury then and have never been since. He testified

in response to a hypothetical question which stated that, if the testimony of defendant's activities about her home is true, her present condition has no relation to any accident, that her present condition is due to arthritis and that there is no reason why she could not perform the work of washing dishes in a small restaurant.

Another, Dr. Young, testified that he examined the defendant in 1925 and again in 1928 and from his examinations he concluded that her condition was dependent upon the emotional condition of the patient and not upon a physical cause; that there were no organic findings and no evidence of physical disturbances of cerebellum or of those nerve pathways in the spinal cord or in the brain that govern coordination of movement. He stated that if the defendant's activities around her home were such as testified to by other witnesses she was not disabled, but was malingering, and that it was his opinion that she would be able to work as a dishwasher in a restaurant, her occupation prior to 1924. He states that her condition is practically the same as it has been at all times since 1924.

On the other hand, three equally reputable medical experts testified in behalf of the defendant. Dr. Overgard testified that, upon an examination in 1927, he found: "The spinous processes at the eleventh and twelfth dorsal vertebrae appear irregular in outline. There is new bone formation between those processes. The anterior posterior view shows some irregularity in outline of the bodies of the eleventh and twelfth dorsal vertebrae." He examined Mrs. Jensen December 6, 1933, just prior to the trial, and found a definite fusing of the bodies between the eleventh and twelfth dorsal vertebrae and the body of the first lumbar vertebra which is the result of an injury of probably long standing. The spinous processes of the eleventh and twelfth dorsal vertebrae, after investigating, have had the appearance of being partly absorbed, probably from the same injury. It looks like it is one solid piece of bone. She has a permanent stiffening of the

vertebrae there and that is bound to have an effect upon the muscles that are attached there and also on the nervous supply. She cannot do any work because she has no particular balance. The fusion of the bones might or might not be due to accident but it is usually due to trauma, but rheumatism or arthritis would also cause a boney deposit. Older people have boney deposits and the tendency is to increase as one gets older. The X-rays are not sharp pictures, because the patient moved a little. The fusion caused by arthritis would not be localized in one particular spot. The fusion in Mrs. Jensen is confined to her spine, although he made no X-ray pictures of other bones of the body. He thought she could probably use her hands on something that she could work from her elbows down. But he thought she was unable to do anything that put her shoulders into play, or put strain on her back, and if she attempted to walk without aid of a crutch, she would fall. He further expressed the opinion that she could not wash dishes in a restaurant because of her disability. She might do some work sitting down.

Dr. Neuhaus examined her in 1924 and a few weeks before the trial. He testified that she was disabled, which inability, he thought, was caused by the accident; that she had difficulty in walking and could not work as a dishwasher in a restaurant as she had prior to the accident. It is his opinion that she has traumatic neurosis which is purely a mental condition.

Dr. Nolan made an examination of defendant about a couple of weeks before the trial in December, 1933. He saw the X-ray plates, and it was his opinion that her disability was caused by an abnormal fixation of the segments of the vertebrae, especially in the thoracic and lumbar region, and a disturbance of the muscles of the lumbar region; that she was unable to balance herself and to walk without aid of some support. In his opinion her condition is attributable to an injury to the spine as shown in the X-ray films. It is his opinion that she is

not able to pursue any gainful occupation and cannot wash dishes in a restaurant as before.

From the record this appears to be a long drawn-out contest between the expert medical witnesses employed by the plaintiff and those employed by the defendant. This disputed testimony of credible witnesses, taken by itself, is not sufficient to support a finding that there is any changed condition which would justify a modification of the award of compensation made in 1924. Therefore, if the case had been submitted solely upon this evidence, it would require a finding for the defendant.

However, there is other testimony in the record which requires our consideration. Several lay witnesses testified that they had observed the defendant on many days at her home, an acreage property near Nashville. These witnesses testified that they watched her activities for considerable periods of time upon numerous days and that she was very active about the place. Among other things they testified that they saw her pump water, and carry it in a pail to her pigs; that they saw her hoeing in the garden for as much as thirty minutes at a time; that they saw her go out and up a hill, crawl under a barbed-wire fence and move a picketed cow; that she did her own washing in tubs outdoors, and that on one occasion she took a stick and beat a rug; that the ground was rough and that her property was on a sidehill and that she walked all over the place without hanging onto anything and without the aid of a crutch.

The testimony of these witnesses was corroborated by moving pictures which they took of the defendant's activities. This evidence was very impressive because it establishes beyond dispute that the defendant's condition is not such as she led the physicians who testified in her behalf to believe. The testimony relating to her method of walking with a crutch and hanging onto furniture while in the doctors' offices and the history of her condition is incompatible with her activities around her home where she walked from her house to the barn, a distance of 75 or 100

feet, and elsewhere about her place without use of any crutch. This evidence is conclusive of the fact that her condition is not at the present time as the court found it to be in 1924, and that her disability from the accident has decreased. The weight of this testimony added to that of the expert witnesses who testified for plaintiff forces us to the conclusion that her disability has terminated. The testimony reveals her as a rather large and heavy woman, 62 years of age, and, as described by one of the expert witnesses, is as active as would be expected of one of her age and weight.

This court is further impressed by the fact that, while the defendant lives with her two adult sons and her condition was called in question by lay witnesses who testified as to her activities around the home, neither she nor her sons took the witness-stand and denied the testimony or explained any of her activities. While, of course, their failure to testify would not be decisive against her, it is a significant fact to be taken into consideration. Furthermore, she did not testify as to her disability. This seriously affects the weight of the expert testimony in her behalf. The opinions of the experts were based in a large measure upon the statements made to them by her, especially her inability to walk. The truth of these statements is disproved by several lay witnesses and the pictures introduced in evidence. Her statements to the physicians were not made under oath but were self-serving declarations. When these statements were proved false by undisputed evidence, the weight of the testimony of the expert witnesses based in part upon the false assumption is greatly impaired. The credibility of their opinions is not greater than the truth of the facts upon which it is based. An opinion that one cannot walk is overcome by undisputed evidence that one does walk. This court reaches the conclusion, as did the trial court, that the defendant's disability has terminated and that the payments for compensation should be terminated as of June 27, 1932, the date the application to modify was filed.

AFFIRMED.