MARY HUFF, APPELLEE, V. OMAHA COLD STORAGE COMPANY,
APPELLANT.

287 N. W. 764

FILED OCTOBER 6, 1939.   No. 30717.

*Edwin W. Cahow, Hamer, Worlock, Randall & Tye* and
*Hall, Cline & Williams,* for appellant.

*Hobert L. Blackledge, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER,
MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

This is a compensation case, involving section 48-142, Comp. St. 1929, as amended (Laws 1935, ch. 57, sec. 27), which reads in part as follows: "(b) If the parties cannot agree, then at any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury." The question to be determined is whether or not the plaintiff suffered an increase of incapacity due solely to the injury.

It is not disputed that the plaintiff, on February 21, 1934, sustained an accident arising out of and in the course of her employment as a chicken-picker, receiving an injury to the right brachial plexus. The wage which she was receiving at that time, and upon which the original award of compensation was based, is likewise not in dispute.

A brief history of the proceedings had discloses that plaintiff filed a petition originally with the compensation commissioner May 8, 1934, dismissed by her May 31, 1934, in which she alleged the nature and extent of her injury as follows: "Muscles and ligaments right shoulder torn. Lungs and kidneys injured. Atrophy of right hand." February 20, 1935, plaintiff filed a petition with the compensation commissioner, alleging the nature and extent of the injury as muscles and ligaments right shoulder torn, atrophy of right hand and nerve injury. Hearing was had on this petition March 19, 1935, and an award was made March 28, 1935, the award finding the plaintiff temporarily totally disabled from the date of the accident up to and including March 18, 1935, a period of 55 and 5/7 weeks, and that thereafter all temporary total disability ceased and was followed immediately by permanent total loss of use of plaintiff's right hand, fixing compensation in the amount of $7.94 a week for 175 weeks, as provided in subdivision 3, sec. 48-121, Comp. St. 1929, for the loss of a hand. All of the amounts of compensation were paid with the exception of $31.76, which amount was tendered but not accepted. July 27, 1938, plaintiff filed a petition in the compensation

court, reciting the history of the previous hearing and pleadings, alleging that the nature and extent of her injuries were "injury to the muscles and ligaments of her right shoulder," "atrophy of the right hand and nerve injury;" that plaintiff "suffers extreme and excruciating pains in and about the right hand, shoulder, neck and one side of the face and head;" that she suffers total and permanent disability. Hearing was had on this petition September 23, 1938. November 30, 1938, an order of dismissal was entered by the compensation commissioner, stating that "the medical evidence was not sufficient to allow further or additional compensation." Plaintiff waived rehearing and appealed to the district court, filed a petition therein, reciting the history of the case, and, in addition, alleged that solely as the result of the injuries which she sustained her incapacity has increased, and that she has suffered and sustained total and permanent loss of her right hand, all of the right arm and right shoulder, including injury to her neck and the side of her face and head, and to her entire nervous system. The defendant answered, alleging that the award of March 28, 1935, by the compensation commissioner is binding, final and conclusive upon the parties, and that all of the issues between the parties have been adjudicated. The plaintiff's reply alleged material increase in the disability as fixed by the award of March 28, 1935, and that at this time the plaintiff is totally and permanently disabled.

The district court modified the award by finding the plaintiff totally and permanently disabled and unable to perform any substantial amount of labor either in her particular line of work or in any other work for which she would be fitted except for the injury (*Wingate v. Evans Model Laundry*, 123 Neb. 844, 244 N. W. 635), and fixed her compensation recovery under subdivision 1 of section 48-121, Comp. St. 1929. Defendant appealed from this judgment and here contends that the finding and judgment of the district court are contrary to the law and the evidence and not sustained thereby.

Upon an application to modify an award under the workmen's compensation act, proceeding under subdivision (b), sec. 48-142, Comp. St. 1929, as amended in 1935, the burden of proof rests upon the petitioner to establish by a preponderance of the evidence that the disability has increased, decreased or terminated as alleged. *Metropolitan Dining Room v. Jensen*, 126 Neb. 765, 254 N. W. 405.

The medical testimony in the instant case discloses that plaintiff was examined and treated during 1934 and 1935 by Doctors L. E. Dickinson and A. E. Bennett. She was examined once in 1935 by Dr. L. M. Stearns and once in 1935 by Dr. C. K. Gibbons. She was reexamined by the four doctors in 1939, shortly before the trial of this cause. Without dispute the medical testimony agreed that the injury to the brachial plexus causes the pain in the plaintiff's right shoulder, arm and hand, which leads to her disability; that the brachial plexus is made up of bundles of nerves which emerge from the vertebral foramina in the lower cervical and upper thoracic region and extend downward and outward to the axilla back of the collar bone and above the apex of the lung; that the plaintiff suffered considerable injury to the median and ulnar nerves; that the ulnar nerve controls the muscles of the little and ring fingers; that the muscles are partially paralyzed due to a nerve injury.

Doctor Gibbons testified that the plaintiff was suffering from the same injury that she complained of when he previously examined her in 1935, and made the same general complaints,—the pain in the arm, shoulder and hand; that she is not able to perform the work in which she was employed at the time of the injury because of the disability in her hand and shoulder.

Doctor Bennett examined the plaintiff for the first time on June 1, 1934; found a very marked nervous state; that the plaintiff was developing a traumatic neuritis from an injury which she had received to her shoulder region, affecting the brachial plexus. He testified that he saw her several times in October, 1934; her complaints were the same,—pains through the shoulder and the arm, difficulty

in moving the muscles of the fingers; that she also had a herpetic skin eruption, becoming pronounced. He treated the plaintiff in November, 1934, in January, 1935, and examined her before the present trial, and found that she had difficulty in gripping with her right hand, except the thumb and forefinger, in lifting the right arm, because of pain; that when she attempts to work she has a rapid fatigue of the muscles in the right hand and arm. The doctor testified that the condition is essentially the same, unchanged except that the skin manifestation is much less; that the character of the pain is the same type of disability complained of by plaintiff in 1935, and her disability is definitely related to the brachial plexus injury; that the general physical condition of the plaintiff is good, outside of the right shoulder, arm and hand, where she has "tenderness over the clavicle, the supraclavicle space high up in the neck, tenderness in front of the shoulder and in the axilla;" that her disability at that time was "in the lower cord of the brachial plexus." The doctor stated that, "so far as the weakness of muscles, pain, contracture of the fingers, the amount of pain she has, and all that, it seems to me it is just the same;" that she cannot use her right arm or elbow or her right shoulder because of pain.

Doctor Dickinson found no evidence of any disability in his examination before the present trial, except in the right hand, right arm and right shoulder, and he testified that plaintiff made the same complaint of pain in the shoulder, in the arm and hand upon movement in 1935 that she made in the later examination; that the statement that plaintiff has a total loss of use of the right hand does not, in itself, affect and describe the plaintiff's present disability, for the reason that she does have a disability of the right shoulder and elbow.

Doctor Stearns testified to an examination he made prior to the present trial, that the condition of the plaintiff was essentially the same as he found it on the first occasion,— "continued pain over the clavicle. Movements of the arm aggravated the pain. There was no atrophy. There was

slightly greater contracture, a little more contracture of the ring and little fingers. The joints could be used, but only with considerable effort and self-control," due to the pain produced. He testified that no new members were influenced or anything in addition than shown in the examination made in 1935, and when questioned by the court the doctor stated that he found the same condition in his first that he found in his second examination.

The plaintiff's testimony, corroborated by others, was to the effect that she was not able to perform the work in which she had been previously employed; that she did her housework assisted by her 16-year-old daughter, but did not have the use of her right hand and arm; that after the first award she was able to indorse compensation checks and write a little with her right hand, but that she cannot at this time write at all, except with her left hand, due to the contractural effect of the injury by disabling her hand. We can conclude from all the testimony that plaintiff does not have, and has not had, the use of her right arm or right hand in any manner since she was injured in 1935.

The increased incapacity claimed by the plaintiff, as disclosed by the evidence, may be summarized briefly as follows: The disability of not being able to write at the present; the increased pain in the region of the shoulder, an aggravation of pain by cold weather, which is incident to the injury suffered by plaintiff, or by the use of the right hand or arm or shoulder, or by violent exercise of any part of her body, the condition being more pronounced than formerly; that her present condition for operative purposes is less favorable than it was within six months of the accident; that the plaintiff's case is hopeless, as far as improvement is concerned, due to the delay in time. As to whether or not improvement in plaintiff's condition may be had is not clear. Doctor Gibbons testified that "after so long a time the prognosis looks bad." However, the doctor did not know whether medical treatment would relieve the plaintiff and stated that after a period of five years partial paralysis is liable to be permanent, which would necessarily

mean the disability now existing, and as had existed in 1935, in the right arm and the right hand.

The similarity in nature and extent of the plaintiff's injuries, as alleged in her petitions before the compensation commissioner on three occasions and in the district court, is significant. The testimony of the doctors is conclusive that there is no difference in the complaints and injuries received by the plaintiff from the time of the award made in 1935 and the time of the examination by the doctors in 1939. The plaintiff contends that the testimony of the doctors, in using the word "essential," which is tantamount to "substantial," is not a statement that the condition of the plaintiff was essentially the same as testified to by the doctors in the compensation hearing.

The plaintiff makes the further objection that the evidence introduced before the compensation commissioner in 1935 is not before this court. We believe, however, that the evidence introduced in the instant case is sufficient to disclose the plaintiff's incapacity at the time of the compensation hearing in 1935, compared with her incapacity at the time of the present trial. The examinations of the doctors, as herein set out, are conclusive as to the incapacity suffered by plaintiff from 1935 to the present time. In addition thereto, the testimony of the plaintiff is sufficient to disclose a comparison of her present incapacity with the incapacity suffered by her in 1935.

The Minnesota compensation act provides for the modification of a judgment as follows: "(b) If the parties cannot agree, then at any time after six (6) months from the date of the award an application may be made to the court by either party on the ground of increase or decrease of incapacity due solely to the injury." Gen. St. Minn. 1913, sec. 8222. It will at once be noted that this statutory provision is analogous to subdivision (b), sec. 48-142, Comp. St. 1929, as amended.

While it would appear that the section of the Minnesota statute, quoted above, is repealed by the Laws of Minnesota for 1921, such repeal would not be effective as to

the comparison made herein, for the reason that subdivision (b), sec. 48-142, Comp. St. 1929, as amended, is the law in Nebraska.

In the case of *Connelly v. Carnegie Dock & Fuel Co.*, 148 Minn. 333, 181 N. W. 857, quoting from *State v. District Court of Hennepin County*, 136 Minn. 147, 161 N. W. 391, the court said: "Justice Bunn, in referring to this statute said: 'It is quite manifest that this section was not intended as a method of correcting errors in fixing the amount of compensation, as the remedy is not available until after six months from the award, and then only where there has been an "increase or decrease of incapacity." This clearly means an increase or decrease of capacity since the award was made, a change in circumstances that justifies a modification.' "

Before recovery may be had for an increase of incapacity due solely to the injury, within the meaning of subdivision (b), sec. 48-142, *supra,* the plaintiff must prove by a preponderance of the evidence that her incapacity has been increased (meaning amplified, enlarged, expanded, extended or intensified. Webster's New International Dictionary) ; that is, that there now exists a material and substantial change for the worse in the plaintiff's condition,— a change in circumstances that justifies a modification, distinct and different from that for which an adjudication has been previously made. Plaintiff has failed to meet the burden of proof placed upon her. We fail to find, from an examination of the record, wherein the plaintiff has suffered an increase of incapacity, as compared with the incapacity suffered by her at the time of the injury and of the hearing before the compensation commissioner.

Referring to plaintiff's inability to use her right hand for the purpose of writing, she recovered, under subdivision 3, sec. 48-121, Comp. St. 1929, for the loss of the use of her hand in its entirety. The compensation commissioner may have erred in his adjudication of the rights of the plaintiff in the original hearing, and, perhaps, should have given the plaintiff compensation for the loss of use of her

right arm. No appeal was taken by plaintiff from the award. Mistake is not a ground provided by the Nebraska compensation statutes to modify a final award of compensation. A judgment is final except that after six months it may be modified by application of either party for increase or decrease of disability. *Metropolitan Dining Room v. Jensen, supra.*

The plaintiff sought to obtain compensation for an increase in her disability, as provided by subdivision (b), sec. 48-142, *supra.* In *Metropolitan Dining Room v. Jensen, supra,* it was said: "The judgment awarding compensation is final and cannot be modified or vacated except as provided either by the compensation statutes or statutes relating to civil procedure. In fine, all matters are excluded from the consideration of the court upon an application to modify the decree except to determine the increase or decrease of the disability due solely to the injury."

The plaintiff's injury is clearly within subdivision 3 of section 48-121, Comp St. 1929. The legislature separated the specific injuries,—loss, or loss of the use, of a hand, arm, etc.,—from other partial disabilities, and by the use of the language,—for all disability resulting from the loss of a hand, etc., compensation shall be as provided in subdivision 3. Subdivision 3, sec. 48-121, *supra,* conclusively determines that for the loss of a specific member compensation will be paid for a designated period of time, definitely fixing the liability. The language is plain and unambiguous and is not susceptible of other construction.

The rule announced in *Hull v. United States Fidelity & Guaranty Co.,* 102 Neb. 246, 166 N. W. 628, *Schroeder v. Holt County,* 113 Neb. 736, 204 N. W. 815, and *Carlson v. Condon-Kiewit Co.,* 135 Neb. 587, 283 N. W. 220, governs. In the *Carlson* case the court said in the opinion: "It was clearly the intention of the legislature in establishing a schedule of benefits for the listed specific injuries to fix such benefits without regard to the extent of the subsequent disability of the injured employee." In commenting upon the

same section of the statute this court said: "Perhaps it was thought that the period during which compensation was allowed would be sufficient to allow the injured workman to fit himself for some other kind of occupation, or that if a man lose the use of an * * * arm," etc., "and is otherwise competent and in good health, this should not compel an employer, who perhaps has been guilty of no negligence, to bear the burden of his support indefinitely. The law seems intended to help the injured workman to help himself. Whatever the legislative motive or intent may have been, we cannot disregard the plain words of the statute." *Hull v. United States Fidelity & Guaranty Co., supra; Carlson v. Condon-Kiewit Co., supra.*

The judgment of the trial court is reversed, and plaintiff's action dismissed.

REVERSED AND DISMISSED.