OTTO H. SCHMIDT, APPELLANT, v. CITY OF LINCOLN, APPEL-
LEE.

290 N. W. 250

FILED FEBRUARY 9, 1940.   No. 30652.

*Clifford L. Rein,* for appellant.

*Clarence G. Miles* and *Frederick H. Wagener, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER,
MESSMORE and JOHNSEN, JJ.

JOHNSEN, J.

This is a proceeding under the workmen's compensation
law, which was dismissed by the district court and is here
on an appeal by plaintiff.

Plaintiff claims to have been injured on August 29, 1936,
while employed by defendant as a city fireman. He says

that he fell on his right hip and buttock, while carrying a hose line into the basement at a fire. No one saw the accident, and the record seems to imply a doubt in the minds of some of the other firemen whether it ever occurred. He was on a twenty-four hour shift at the time and remained on duty all day and night following, apparently without making any report of it to his officers. In the afternoon of the next day, however, which was his day of rest, he called his family physician, and the latter telephoned the captain of his company that he would not be on duty the following morning, because of his leg. The personal records of the fire department contain conflicting entries, there being at one place a notation, "O. Schmidt, off sick," and, at another, an entry, "O. Schmidt off—alleged injury." Six days later plaintiff was released by his doctor and was given a certificate that he was able to resume his duties. At that time a notation was made, "O. Schmidt in from sick leave."

Defendant contends that the evidence does not satisfactorily establish that plaintiff ever sustained an accident, but this contention we shall answer with the simple statement that the facts above detailed, when considered with the findings and diagnosis of plaintiff's doctor on the day after the fire, are sufficiently convincing that an accident occurred. Some of the evidence by which it is sought to establish the other necessary elements of plaintiff's case is not so convincing, however.

Plaintiff says that he has been disabled ever since the date of the accident, although he claims also that his condition became progressively worse after he was discharged from the fire department some months later. He testified that, from the time of the accident, he never was able to do his previous work, was given lighter duties, was relieved from drills, and was assisted in his tasks by other firemen. This statement, however, is disproved by his officers and fellow firemen. The evidence clearly establishes that he performed all of his previous duties, without any manifestation of disability or handicap, from the time he returned to work on September 6, 1936, until his discharge on January

.3, 1937. He was discharged because the officers regarded him as an agitator and a troublemaker. Among other things, he had previously cursed an officer when he was requested to perform a certain task, and, on the occasion of the fire involved in this proceeding, he had officiously attempted to give orders, without actual authority to do so. He knew that he was in disfavor and sensed that it was only a question of time until he lost his job. At one time he declared to another fireman, "They don't give me no raw deal; I'm going to the hospital and go in a cast, and I know I'll beat them." This statement is not without significance, in the light of subsequent developments.

From September 6, 1936, until after his discharge, plaintiff had neither sought nor apparently needed further medical attention. Following his discharge, he began to walk with a limp and to use a cane. He claims that he limped while he was still employed at the fire station, but the testimony of thirteen other firemen disproves this assertion. On July 30, 1937, just before the present proceeding was commenced, he again consulted Dr. George Lewis, his family physician, for the first time since September 5, 1936. About thirty days later, and after compensation proceedings had been instituted, Dr. Lewis began to administer diathermy treatments. In due season, he was sent to the office of Dr. Arthur L. Smith, and still later to that of Dr. Czar Johnson, for examination, report, and expert testimony. Drs. Lewis, Smith and Johnson all gave him blue ribbons for total and permanent disability. The cause of the disability was declared to be traumatic neuritis of the right sciatic nerve, a right sacro-iliac strain, and a rotation of the bodies of the lumbar vertebræ.

The compensation court directed an examination to be made by a medical advisory board consisting of Dr. Clayton Andrews, Dr. John C. Thompson, and Dr. Charles H. Arnold. The members of this board were of the opinion that plaintiff was not suffering from any disability attributable to the accident. Dr. Arnold testified that, while plaintiff walked with a slight limp and rotated the toes of

his right foot outward about 5 per cent. more than those of his left foot, this would not disable him in his work, nor could he discover any physical cause for it. He and the other two members of the advisory board did not believe that there could have been any recurrence of the injury so long after the accident had occurred and under the circumstances that plaintiff claimed. Dr. James E. M. Thomson, an orthopedic specialist, also testified that he could find no evidence of a sacro-iliac strain or of traumatic neuritis. As he put it, "I tried my best to find something." He and Dr. Arnold and Dr. Rowe, a roentgenologist, further declared that the X-ray films produced by Dr. Smith did not show any pathological rotation of the bodies of the lumbar vertebræ, but indicated merely a slight twist of the pelvis by the patient on the X-ray table at the time the films were taken. Motion picture films taken of unguarded actions of plaintiff clearly demonstrate that he is not suffering from total disability.

In this situation we are unable to agree with the finding of the workmen's compensation court, initially and on rehearing, that plaintiff is totally disabled. The opinion of the medical advisory board and of defendant's expert witnesses appears to be that plaintiff has not suffered any industrial disability as a result of the accident. It is shown, however, that he walks with a slight limp and an outward rotation of his right foot. It may be that this does not involve any handicap in industrial employment, which appears to have been the test applied to the situation by the medical experts on both sides. This does not exclude the possibility, however, that some limitation may have resulted in the physiological functions or movements of his right leg. If so, he is entitled to compensation under subdivision (3) of section 48-121, Comp. St. 1929, irrespective of whether an industrial disability is present or not. Perhaps the testimony of defendant's doctors must be construed to imply that the limp and outward rotation of the foot are wholly cultivated. We are not willing, however, to pass judgment upon that question at the present time, and, in

fairness to plaintiff, we shall permit the case to be remanded to enable testimony to be taken on whether such an impairment exists, or whether the limp and foot rotation are purely affected.

Taking the view, as we do, that the weight of the evidence clearly establishes that total disability does not exist, and that it further shows that plaintiff was able to have carried on his previous occupation or other industrial employment had he not been discharged, we necessarily must hold that a temporary disability allowance is not involved. The fact that since the institution of this proceeding Dr. Lewis has undertaken to administer sporadic diathermy treatments to plaintiff is not persuasive.

The bill of Dr. Lewis for the medical care given plaintiff at the time of the accident should be allowed by the trial court, and if it be determined that plaintiff's limp and foot rotation are not wholly affected, he should, as a matter of fairness, be allowed payment also for the subsequent treatments shown in the record, even though their necessity and utility are questionable. Should it be found that some limitation of the functions of plaintiff's leg actually exist, and that his limp and foot rotation are not mere affectation and cultivation, he should be reimbursed for the initial bill of Dr. Arthur L. Smith, as a diagnosis made for treatment purposes, although the examination was not made until after the institution of this proceeding. The second bill of Dr. Smith and the bill of Dr. Johnson are charges for examinations made wholly for testimony purposes, and so are not chargeable against defendant.

In making disposition of the cause on its merits, we have hurdled, for the moment, one or two contentions of the parties, and these we now turn to discuss. We have previously indicated that the compensation court, on initial hearing and on rehearing *en banc,* entered an award in favor of plaintiff for total disability. Because a rehearing was had in the compensation court, the appeal which defendant took to the district court was necessarily, under section 48-174, Comp. St. Supp. 1939, in the nature of an error

proceeding. Since the disability award made by the compensation court found support in the testimony of Drs. Lewis, Smith and Johnson, the district court held that it was precluded from trying the case *de novo* and therefore was obliged to confirm and ratify the finding of the compensation court on this issue. It vacated the award of the compensation court and dismissed the proceeding, however, on the ground that plaintiff had failed to make the necessary claim for compensation within six months from the date of the accident. The record shows that, within three weeks of the time of the accident, plaintiff requested the chief of the fire department to pay the medical bill of Dr. Lewis for attending him until his return to work. The chief refused to do so, possibly because of the doubt that appears to have been shared by the members of the fire department, whether plaintiff had actually sustained an accident at the fire. Plaintiff made no further claim for compensation, but on August 18, 1937, within a year of the date of the accident, he instituted this proceeding in the compensation court.

The requirement of section 48-133, Comp. St. 1929 (*Id.* Comp. St. Supp. 1939), that a claim for compensation must be made within six months after the occurrence of an injury, has been previously held to be a condition precedent to a right of action under the workmen's compensation law. *Park v. School District*, 127 Neb. 767, 257 N. W. 219. In the case of a latent injury, the time, of course, does not commence to run until the employee has or is charged with knowledge that disability is resulting. *Travelers Ins. Co. v. Ohler*, 119 Neb. 121, 227 N. W. 449; *Scott v. State, ante*, p. 348, 289 N. W. 367. Medical expenses are compensation rights within the meaning of the workmen's compensation law (*Baade v. Omaha Flour Mills Co.*, 118 Neb. 445, 225 N. W. 117), and a demand for payment of medical expenses is necessarily a claim for compensation, where it is made under such circumstances as to manifest an intention to claim the benefits of the statute. Giving to the compensation law the liberal construction to which it is entitled, we

must accordingly hold that, where a claim for any compensation benefits is made within six months after the occurrence of an injury, this is sufficient to support the employee's right to institute proceedings within a year, to recover every benefit which has then accrued under the law. Other courts have so held. *New Staunton Coal Co. v. Industrial Commission*, 304 Ill. 613, 136 N. E. 782; *Aiello v. Ford Motor Co.*, 273 Mich. 15, 262 N. W. 726. It is not necessary for the employee to specify the extent of the benefits to which he thinks himself entitled, and unless he attempts to conceal the scope of his rights for the purpose of misleading the employer, and the employer is in fact prejudiced thereby, the requirement of the statute is sufficiently met by a claim or demand for any compensation right, sufficient to advise the employer of his intention to bring the injury under the statute and to avail himself of its provisions. The fire chief, as one of plaintiff's superior officers, was a proper person under the regulations and practice of the department, as disclosed by the record, on whom to make the necessary claim or demand in this case. It follows that the district court erred in dismissing the proceedings on the ground that plaintiff had failed to comply with the statutory requirement for making claim.

The district court, as has been indicated, held that, since there was some evidence to support the finding of the compensation court on the question of total disability, it could not review that finding on error. Plaintiff contends that, since defendant took no cross-appeal from the holding of the district court, we are not at liberty to try the case *de novo*. Such cross-appeal could have accomplished nothing. It is our duty to give the compensation law a liberal interpretation, and to avoid setting up procedural snarls not imposed by the legislature, which are designed to trip either party and to prevent the supreme court from assuming jurisdiction to determine the merits of a case. Section 48-174, Comp. St. Supp. 1939, expressly imposes upon us the obligation to try the case *de novo* on the record, where any finding of fact upon which the judgment of the court has

been made to depend is not conclusively supported by the evidence. Here, the erroneous finding of the district court that plaintiff had failed to make timely claim for compensation, upon which the judgment was based, left the case in our lap for trial *de novo* under the statute.

The judgment is reversed and the cause remanded to the district court, with directions to remand it in turn to the compensation court for proceedings in accordance with this opinion.

REVERSED.