ORVAL R. CHADD, APPELLEE, v. WESTERN CASUALTY AND SURETY COMPANY ET AL., APPELLANTS.

89 N. W. 2d 586

Filed April 18, 1958. No. 34348.

*Chambers, Holland, Dudgeon & Hastings,* for appellants.

*Lloyd E. Chapman,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an appeal in a workmen's compensation case

brought under the provisions of section 48-141, R. R. S. 1943, for the modification of the amount of an award on the ground of increase of incapacity due solely to an injury. The trial court granted the application. Defendants appeal.

The appeal presents three questions generally stated as follows: Did plaintiff meet the burden of proof required by the act? May the amount of the award be based on an increase by legislative act in the weekly base payment subsequent to the injury and the original award? Did the court err in allowing medical fees for services and expert witness charges?

We reverse the judgment of the trial court and remand the cause with directions to dismiss the plaintiff's petition.

The matter is here for trial de novo under the provisions of section 48-185, R. R. S. 1943, as construed in Werner v. Nebraska Power Co., 149 Neb. 408, 31 N. W. 2d 315, and subsequent cases down to and including Miller v. Peterson, 165 Neb. 344, 85 N. W. 2d 700.

The de novo trial and determination is limited to those questions of fact which may be and are properly presented and are properly determinable in this sort of a proceeding.

"The incapacity * * * into which the courts may inquire in this proceeding and use as a basis for the modification of an award is that increase or decrease of incapacity which is due solely and only to that violence to the physical structure of plaintiff's body which resulted from his accident, and which increase or decrease has occurred since the award was rendered." Ludwickson v. Central States Electric Co., 142 Neb. 308, 6 N. W. 2d 65. The above holding is quoted and approved in Riedel v. Smith Baking Co., 150 Neb. 28, 33 N. W. 2d 287.

We stated the rule also in Huff v. Omaha Cold Storage Co., 136 Neb. 907, 287 N. W. 764: "Before recovery may be had for an increase of incapacity due solely to the injury, within the meaning of subdivision (b), sec. 48-

142, *supra* (now section 48-141, R. R. S. 1943), the plaintiff must prove by a preponderance of the evidence that her incapacity has been increased (meaning amplified, enlarged, expanded, extended or intensified. Webster's New International Dictionary); that is, that there now exists a material and substantial change for the worse in the plaintiff's condition,—a change in circumstances that justifies a modification, distinct and different from that for which an adjudication has been previously made."

Plaintiff filed a petition in the compensation court June 18, 1954, alleging severe and permanent injuries in the course of his employment arising as a result of being hit on the head by a falling timber on a construction project at the Lincoln Air Base. Defendants admitted the accident and denied generally. The matter was heard before one judge of the compensation court resulting in an order dismissing the petition. A rehearing was had before the court en banc. The result, so far as important here, was a judgment awarding plaintiff "30% permanent partial disability to plaintiff's body as a whole."

The compensation court further found "that plaintiff has failed to meet the burden of proof required to establish by a preponderance of the evidence any causal connection between the disabilities, if any, of plaintiff's eyes and ear and the accidental injury of January 13, 1954." The matter was appealed to the district court by the defendants, resulting in a judgment of affirmance on May 19, 1955. That judgment became final.

Thereafter plaintiff brought this proceeding in the district court seeking a modification of the above judgment and an award of compensation based on permanent total disability to his body as a whole. The district court rendered judgment awarding $30 per week permanent total disability for the remainder of the 300-week period from January 13, 1954, and thereafter compensation at $25 per week for the remainder of the life of the plaintiff. It awarded medical fees payable to

Dr. D. D. Sanderson in the sum of $150. Other items are not assigned as error.

We must first determine the effect of the finding, which has become final, that plaintiff failed to prove any causal connection between the disabilities, if any, of his eyes and ear, and the accidental injury.

The rules are: The statute restricts the basis for a modification of a previous award of compensation to the increase or decrease of incapacity that has occurred since the award and has been caused by the violence to the physical structure of the body of the claimant by the accident. Any increase or decrease in incapacity of the claimant the cause of which is not the injury received in the accident, the basis of the previous award, is insufficient to justify modification of the award; or as stated in the body of the opinion: "It is a claim of right of additional recovery because of a new effect and result of the same injury caused by the accident, the basis of the previous award." Peek v. Ayers Auto Supply, 157 Neb. 363, 59 N. W. 2d 564.

We are unable to determine just what injuries the compensation court determined were the result of the violence to the physical structure of plaintiff's body caused by the accident and upon which it based its finding of "30% permanent partial disability to plaintiff's body as a whole." It is patent that plaintiff received a skull fracture resulting from a blow on the head. The results flowing from it were the items that made up the partial disability rating.

We do know (as a result of the finding quoted above) that any disabilities of eyes or ear were not elements that entered into that permanent partial rating. Those disabilities must be put aside and not considered in this proceeding.

We have, then, this question: What increase of incapacity has occurred since the award that has been caused by the violence to the physical structure of the body of plaintiff by the accident?

On this question the plaintiff, having the burden of proof, offered his own testimony and that of his wife and daughter. This consisted of evidence of his condition at the time of the hearing that he was "worse" now than at the hearing before the compensation court and that he was totally disabled. We do not deem it necessary to set out the evidence in detail, because threaded through it and as an integral part of the whole are the alleged contributing factors of his eyes and ear difficulties.

Plaintiff also offered the evidence of Dr. D. D. Sanderson, an eye and ear specialist. His findings and conclusions must be put aside for the above reason.

Plaintiff's other witness was Dr. Paul D. Marx. It is quite apparent that the award by the compensation court rested in large part upon his testimony. It is not too clear as to whether Dr. Marx did or did not consider the eyes and ear conditions in his testimony in the instant trial. It is not his specialty. He had examined the plaintiff on a number of occasions before the compensation court trial and since. He had treated the plaintiff. He had given the plaintiff a complete examination a few days before this trial. He testified on direct examination that plaintiff's physical condition had not changed enough to warrant a complete X-raying; that plaintiff was weak, nervous, and had periods of dizziness; that he had impaired memory; that he had difficulty in articulating; that there was not any great increase or worsening as to either memory or articulation, but showed no improvement; and that he had a decrease in muscular power of hands, shoulders, and legs (relative to which limited activity or almost complete inactivity was a factor, though certain tenderness earlier apparent was now missing).

On cross-examination he testified that plaintiff's complaints were substantially the same as they had been from the beginning "with very slight increase in some"; that plaintiff "has stabilized but is now showing prob-

ably some findings as a result of age and arteriosclerosis, which are usually aggravated by this type of trauma"; and that essentially his "findings are the same as they have been all along."

Obviously under that evidence of findings plaintiff has shown no increase of incapacity required by the rules quoted above. Patently Dr. Marx' findings do not support an award showing an increase in incapacity. His conclusion was this: "A- Well, I find and feel this man —as I thought before, but even more so now—permanent or one hundred percent disability." Stated otherwise, Dr. Marx disagreed with the finding of the compensation court and continued to disagree with it as to the percentage of the disability. Manifestly that evidence will not support an award based on an increased disability. To so hold would be to convert this modification proceeding into a new trial on the merits. It is not that, and under the statute cannot be.

It follows that the award of the trial court granting the plaintiff an increase of compensation based on an increase of incapacity since the award cannot be sustained and must be set aside.

At the time plaintiff was injured the law provided, applicable here, total disability compensation at the rate of not more than $28 per week nor less than $17 per week, and thereafter for the remainder of life 45 percent of the wages received at the time of injury but not exceeding $22 per week nor less than $15 per week. § 48-121, R. R. S. 1943, as amended by Laws 1953, c. 162, § 1, p. 506. It was under this statutory provision that plaintiff's award of temporary total and permanent partial disability was made.

In 1955 the Legislature increased the rate of $28 per week to $30 per week nor less than $20 per week, and the maximum after 300 weeks to $25 per week nor less than $17 per week. § 48-121, R. S. Supp., 1953, as amended by Laws 1955, c. 186, § 1, p. 527.

The trial court in its award in the instant proceeding

granted a total disability award prospectively at the rate of, first, $30 a week for 300 weeks and thereafter at the rate of $25 per week for the remainder of his life under the 1955 act.

The second assignment of error is that the trial court erred in applying the 1955 rate of total disability to this case. Defendants contend that the 1953 act fixed the amount of compensation. Plaintiff contends that the 1955 act operates prospectively from the date of the enactment and that the trial court was correct in applying it.

The 1957 session of the Legislature increased these comparative figures to $34 per week nor less than $20 per week for total disability for the first 300 weeks, and not to exceed $27 per week nor less than $17 per week for the remainder of the life of the employee. § 48-121, R. S. Supp., 1955, as amended by Laws 1957, c. 204, § 1, p. 716.

The statute in effect when the accident happened and the compensation court award was made provided that for disabilities partial in character (with exceptions not applicable here) the compensation should be 66⅔ percent of the difference between the wages received *"at the time of the injury"* and the earning power of the employee thereafter but not more than $28 per week (with time limits not involved here). § 48-121, R. R. S. 1943, as amended by Laws 1953, c. 162, § 1, p. 506.

At the time of this accident the statute provided: "Wherever in this act the term 'wages' is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force *at the time of the accident."* § 48-126, R. R. S. 1943, as amended by Laws 1953, c. 163, § 1, p. 512. (Emphasis supplied.)

That language was retained in the 1957 amendment. § 48-126, R. S. Supp., 1955, as amended by laws 1957, c. 204, § 3, p. 721. So we must start with the fact that

the base figure in calculating the compensation is the wage "in force at the time of the accident."

It will be seen that the Legislature throughout has fixed the time for the calculations as to compensation to be that of the "time of the injury." It is a matter of common knowledge that wage scales have increased markedly these last years. Obviously the Legislature intended by the 1955 and 1957 amendments to keep the compensation payments in some relative balance in proportion to the wages received at the time of the accident.

It is apparent that all calculations were intended by the Legislature to have reference to wages, percentages, and results as of the time of the injury.

The trial court erred in increasing the amount of the award for permanent partial disability.

The trial court in the modification of award decree directed the defendants to pay to Dr. Sanderson a fee in the sum of $150. This was testified to as $80 for services prior to and at the hearing before the compensation court; $20 for examinations made subsequent thereto; and $50 for a witness fee in the district court at this hearing. As to the $80, plaintiff states that it was "overlooked" at the time of the award of the compensation court. It is obvious that it was not overlooked but was disallowed because of the denial of liability of defendants for any eyes and ear disabilities. That denial became a final award. The same reasoning applies to the fee for examination preliminary to and testifying in the instant case. If the defendants are not liable for the disability arising from the eyes and ear conditions, they are not liable for the fee here which involves that disability. The court erred in the allowance of this item. See Schmidt v. City of Lincoln, 137 Neb. 546, 290 N. W. 250.

The judgment of the trial court is reversed and the cause remanded with directions to dismiss the petition for modification of the award.

REVERSED AND REMANDED WITH DIRECTIONS.