JACK FROST, APPELLEE, V. UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLANT.

FILED OCTOBER 20, 1922.    No. 22833.

1. Master and Servant: EMPLOYERS' LIABILITY ACT: COMPENSATION. Under the provisions of section 3044, Comp. St. 1922, held, that a claimant for compensation, who had sustained an injury to both legs, resulting in a total loss of the use of them for a period of two years, followed by a permanent partial loss of the use of them, was entitled to recover such proportion of the compensation allowed for total disability, under subdivision 1 of said section, as the extent of his loss would bear to the total loss of such members.

2. ——: ——: OPERATION. The unreasonableness of the refusal of an injured employee, who is seeking to recover compensation under the workmen's compensation law, to permit an operation to be performed, is a question of fact to be determined from the evidence.

3. ——: ——: ——. Held, the evidence in this case sufficient to support the finding that the refusal was not unreasonable.

APPEAL from the district court for Lancaster county: ELLIOTT J. CLEMENTS, JUDGE. Affirmed.

Reavis & Beghtol and C. E. Sanden, for appellant.

Charles S. Roe, contra.

*Clarence A. Davis, Attorney General, Charles S. Reed* and *Lester L. Dunn, amici curiæ.*

Heard before MORRISSEY, C. J., LETTON, ALDRICH and FLANSBURG, JJ., REDICK and SHEPHERD, District Judges.

FLANSBURG, J.

This action was instituted to test the extent of the plaintiff's right to compensation under the workmen's compensation law. He was injured on December 26, 1919, while in the employ of the Nebraska Material Company. The defendant, United States Fidelity & Guaranty Company, carried the insurance covering the risk.

While the plaintiff was loading stone for the Nebraska Material Company; a load of the stone fell and crushed both of his legs, breaking each of them between the knee and ankle. For a period of two years from the date of the accident the plaintiff has been unable to walk, and the defendant has paid him compensation. The defendant now claims that an operation would cure him, and has instituted this proceeding, seeking permission to discontinue payments of compensation on the ground that the plaintiff unreasonably refuses to allow any operation to be performed. The trial court found that the refusal of the plaintiff to submit to a surgical operation was not unreasonable, and denied the defendant the relief asked. From this order the defendant appeals.

The defendant called three doctors by whom it was attempted to prove that an operation was proper and would probably cure or greatly improve the plaintiff's condition, and would be attended by no material risk or extraordinary pain, but these doctors did not agree among themselves as to the course to be taken, nor as to the exact cause of the continuance of the plaintiff's disability. One of these physicians testified that the bones of the leg should be rebroken; that they were out of alignment, and that, by placing them in proper alignment after rebreaking and holding them there by a plaster cast, a proper or greatly improved functioning of the feet and ankles would be ob-

tained; that this could be done by a closed operation, but that a general anæsthetic would be necessary. The other two doctors, who testified for the defendant, said that a rebreaking of the legs was unnecessary; that the disability existing in plaintiff's feet and ankles was due, not so much to a deformity of the bones of the leg, as to adhesions found in the muscles and tendons; and that the two bones of the right leg had become grown together, and that the operation necessary to be performed on the right leg was by an incision and opening of the skin and flesh, and the cutting away of the callous growth to such an extent as to separate the two bones; the adhesions in the tendons and tissues were also to be loosened and then the feet placed in plaster casts.

In opposition to this testimony, plaintiff introduced X-ray pictures showing that the bones of the right leg were not fastened together by any callous growth, but were, in fact, as far apart as they normally should be. Plaintiff's attending physician, testifying from the pictures, pointed out that there was no fusion of the bones nor growth between them. In his opinion, he said, the plaintiff's disability was due to the adhesion of tendons and muscles, and he strongly advised against an operation or a rebreaking of the bones, saying that to rebreak them would mean a breaking of the bones at another place than at the place of the original break, that this would create additional disturbances, and that the probabilities were that the plaintiff would receive more harm than good from either of the operations suggested. Two other physicians were called by the plaintiff, each of them having acted at one time or another as plaintiff's family physician. Their testimony was to the effect that an operation would not better but would probably aggravate and increase the plaintiff's disability.

It is unnecessary for us in this case to determine just how far a claimant under the workmen's compensation act must go in submitting to surgical operations, for, under any rule we might adopt, it must be conceded that the

evidence in this case is quite sufficient to justify the trial court in its finding that the plaintiff could not be compelled to submit to a surgical operation, the nature of the operation being one upon which the physicians for the employer could not themselves agree. The question of the unreasonableness of the refusal of an injured employee to permit an operation to be performed is, in all events, a question of fact, to be determined from the evidence. It was within the judgment of the trial court to accept the opinion of the plaintiff's witnesses that the operation was inadvisable. The evidence being clearly sufficient to support that fact, the finding made is conclusive upon this court.

The defendant further contends that the award made by the trial court was unwarranted and not in accordance with the provisions of the statute. This question involves the interpretation of certain provisions of the compensation law which are, as far as necessary here, as follows (Comp. St. 1922, sec. 3044):

"The following schedule of compensation is hereby established for injuries resulting in disability:

Subdivision 1. "For the first three hundred weeks of total disability, the compensation shall be sixty-six and two-thirds per centum of the wages received at the time of injury, but such compensation shall not be more than fifteen dollars per week, nor less than six dollars per week. * * * After the first three hundred weeks of total disability, for the remainder of the life of the employee, he shall receive forty-five per centum of the wages received at the time of injury, but the compensation shall not be more than twelve dollars per week nor less than four dollars and fifty cents per week."

Subdivision 2. "For disability partial in character (except the particular cases mentioned in subdivision 3 of this section), the compensation shall be sixty-six and two-thirds per centum of the difference between the wages received at the time of the injury and the earning power of the employee thereafter, but such compensation shall not

be more than fifteen dollars per week. This compensation shall be paid during the period of such partial disability; not, however, beyond three hundred weeks after the date of the accident causing disability."

Subdivision 3. "For disability resulting from permanent injury of the following classes, the compensation shall be in addition to amount paid for temporary disability. (Then follows a schedule of specifically described losses.) For the loss of a leg, sixty-six and two-thirds per centum of daily wages during two hundred and fifteen weeks. * * * The loss of * * * *both legs* * * * shall constitute total and permanent disability and be compensated for according to the *provisions of subdivision 1* of this section. * * * Permanent total loss of the use of a * * * leg * * * shall be considered as the equivalent of the loss of such * * * leg."

"In *all* cases involving a *permanent partial loss* of the use or function of any of the members mentioned in subdivision 3 * * * the compensation shall bear such relation to the *amounts named in* said *subdivision 3* * * * as the disabilities bear to those produced by the injuries named therein."

The plaintiff at the time of the accident was earning $30 a week. The trial court found that the plaintiff had lost the total use of his legs from the time of the accident, December 26, 1919, down to the date of the decree entered herein, April 29, 1922. This covered a period of 122 weeks. For that period the trial court awarded to the plaintiff $15 a week on the basis that a total loss of the use of both legs was a total disability and was to be compensated under the provisions of subdivision 1 of the section. To this extent the interpretation of the statute seems clear, since it is specifically provided that the loss of both legs shall constitute total and permanent disability, and shall be compensated under subdivision 1 as for a total disability.

The court, however, further found that from April 29, 1922, the plaintiff was permanently disabled only to the

extent of "sixty-six and two-thirds per cent of total disability," and for this disability the court, on the theory that the plaintiff would be able to earn $10 a week, allowed him two-thirds of $20, being two-thirds of the difference between what the plaintiff would be able to earn and what he had been able to earn at the time of the accident, and awarded him $13.33 a week for the period of 178 weeks. The allowance so far made was for a total period of 300 weeks subsequent to the date of the accident.

The court then further found that the plaintiff was entitled to recover 45 per cent. of this difference of $20 in earning power, or $9 a week, during the remainder of his life.

The award made for the period subsequent to the decree, based on a finding that there was a 66 2/3 per cent. loss of ability, is what is especially complained of by the defendant.

It is specifically provided by the statute, as appears above, that in all cases involving a *permanent* and *partial* loss of the use or function of any of the members mentioned the compensation shall be in such proportion to the amounts named in subdivision 3 as the loss of the use of the member bears to a total loss. For the total loss of one leg, plaintiff, it is true, would have been entitled to recover, under subdivision 3, two-thirds of his daily wages for 215 weeks; but, on the other hand, for the total loss of his two legs, he would have been entitled to total disability under subdivision 1. Where he has a partial loss of two legs, if the statute is to be literally followed—and we see no ground, and counsel has attempted to point out none, which would make it appear that the literal interpretation of the statute is not in accord with the intention of the legislature—he would be entitled to two-thirds of what he would have recovered for the total loss of two legs, or two-thirds of the compensation allowed for total disability under subdivision 1. This is the construction the trial court has given to the statute, and the award made for the partial disability of the plaintiff for a period continu-

Rawlings v. Chicago, B. & Q. R. Co.

ing from the date of the decree is based upon the proportion of the total award which the partial loss of the use of the plaintiff's two legs would have borne to a total loss of them. No complaint is made that the court did not properly apportion the award, should the interpretation followed be found to be proper, and we therefore do not go into that question.

The judgment of the lower court is

AFFIRMED.