RUBEN O. CARLSON, APPELLEE, v. CONDON-KIEWIT COMPANY, APPELLANT.

283 N. W. 220

FILED JANUARY 6, 1939. No. 30558.

*Hall, Cline & Williams* and *E. W. Cahow*, for appellant.
*H. D. Hunter* and *Lowell L. Walker, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

This is a suit to recover benefits under the workmen's compensation law. The main question presented is the method to be employed in determining the employee's wage for the purpose of fixing the amount of compensation.

The plaintiff was injured on June 23, 1937, while employed as a drag-line operator by the defendant who was engaged in carrying out a construction contract on the hydroelectric project of the Loup River Public Power District. At the time of the accident, plaintiff was assisting in placing the teeth on a drag-line bucket and was struck in the right eye by a piece of steel, resulting in the loss of the eye. The controversy over the weekly compensation rate arises out of the following factual situation: The employer was governed by regulations imposed by the federal Public Works Administration fixing a maximum week of 40 hours for employees on this project. Plaintiff did not work full time, but was employed off and on as needed during a period of nine and one-half weeks. He worked two days in each of the first two weeks, he did not work at all during the next four weeks, and worked two days, three days and two days, respectively, in the last three weeks preceding the injury. It is not disputed that plaintiff was paid 55 cents per hour for his work.

Defendant contends that the average weekly wage actually earned by the plaintiff during the five weeks he actually worked, amounting to $7.48 per week, is the sum upon which compensation should be based. Plaintiff contends that the wage to be used in determining the amount of compensation is $22 per 40-hour week.

The schedule of compensation for the loss of an eye under the workmen's compensation law is: "The following schedule of compensation is hereby established for injuries resulting in disability: * * * For the loss of an eye, sixty-six and two-thirds *per centum* of the daily wages during one

hundred and twenty-five weeks. * * * Provided, that, if at the time of injury, the employee receives wages of less than six dollars per week, then he shall receive the full amount of such wages per week as compensation." Comp. St. 1929, sec. 48-121.

The compensation law also provides: "Wherever in this article the term 'wages' is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. * * * In continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour or by the output of the employee, his weekly wages shall be taken to be his average weekly income for the period of time ordinarily constituting his week's work, and using as the basis of calculation his earnings during as much of the preceding six months as he worked for the same employer; the calculation, furthermore, to be made with reference to average earnings for a working day of ordinary length and exclusive of earnings from overtime." Comp. St. 1929, sec. 48-126.

The record in this case shows that the plaintiff worked only eleven days in nine and one-half weeks. This is not continuous employment within the meaning of the quoted provisions of the act. While it is true that a maximum week of five days and forty hours was stipulated, yet the plaintiff worked only when needed by the defendant. It was in no sense continuous employment and was not intended so to be. Clearly, also, it was not seasonal or employment dependent upon the weather as defined therein. This being true, the case is governed by the first sentence of section 48-126, Comp. St. 1929, providing that the term "wages" as therein used "shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident." See *Davis v. Lincoln County,* 117 Neb. 148, 219 N. W. 899.

Compensation for the loss of an eye is provided for in subdivision (3) of section 48-121, Comp. St. 1929, which specifies the benefits to be paid for specific injuries. Under

this section plaintiff is entitled to receive 66⅔ *per centum* of the daily wages during 125 weeks. It is not disputed in the record that plaintiff received 55 cents per hour as wages and that the working day was eight hours in length. In other words, the plaintiff, for the purpose of this suit, was earning $4.40 per day. Plaintiff is therefore entitled to receive 66⅔ *per centum* of this wage for 125 weeks. In reducing the hourly rate to a weekly rate, the method ordinarily employed would be to multiply the daily wage by the number of working days composing a work week in the occupation in the community where the injury occurred. But, in the instant case, the employment was limited to five work days of eight hours each per week. This must be taken into consideration in determining the weekly rate which in the instant case amounts to $22 per week. *Drum v. Omaha Steel Works*, 129 Neb. 273, 261 N. W. 351; *Gorham v. Kiewit Sons Co.*, 129 Neb. 277, 261 N. W. 353.

The average weekly earnings are not material in this case for the reason that the employment was not continuous, seasonal, nor dependent upon the weather, within the meaning of the compensation law. Under this situation wages must be construed to be the money rate at which the services were recompensed. What is to be considered is not the wage in fact received, but the rate which the contract of hire fixed, whether that wage was in fact realized or not. See *Smolenski v. Eastern Coal Dock Co.*, 87 N. J. Law, 26, 93 Atl. 85.

It was clearly the intention of the legislature in establishing a schedule of benefits for the listed specific injuries to fix such benefits without regard to the extent of the subsequent disability of the injured employee. The period for payment of benefits is definitely fixed at 125 weeks. The rate of payment is clearly based upon the daily wage, not upon an average wage. The language is plain and unambiguous, and is not susceptible of other construction. In commenting on the same section of the statute, this court said: "Perhaps it was thought that the period

during which compensation was allowed would be sufficient to allow the injured workman to fit himself for some other kind of occupation, or that if a man lose the use of an eye, or hand, or arm, or leg, or foot, and is otherwise competent and in good health, this should not compel an employer, who perhaps has been guilty of no negligence, to bear the burden of his support indefinitely. The law seems intended to help the injured workman to help himself. Whatever the legislative motive or intent may have been, we cannot disregard the plain words of the statute." *Hull v. United States Fidelity & Guaranty Co.*, 102 Neb. 246, 166 N. W. 628.

We necessarily conclude that the plaintiff in this case is entitled to receive $14.67 per week for 125 weeks as compensation for the loss of his eye. The trial court therefore correctly awarded that amount.

Plaintiff claims that he is entitled to recover for loss of stereoscopic vision in the instant case. Stereoscopic vision may be defined as that function of the eyes which enables us to get the effect of solidity or depth. By its very nature, the vision of two eyes is required to give this effect. Naturally, the loss of one eye destroys stereoscopic vision. In the instant case, plaintiff suffered the loss of one eye, the other being uninjured. The compensation set forth in subdivision (3), section 48-121, Comp. St. 1929, is exclusive and includes all impairments that naturally follow the loss of an eye. We hold that plaintiff is not entitled to an award for loss of stereoscopic vision, it being included in the benefits awarded for the loss of an eye.

The plaintiff claims that he is entitled to a penalty for the delay of payments because there was no reasonable cause for controversy. This court has many times held: "Where a reasonable controversy exists between an employer and an employee, as to the former's liability under the workmen's compensation act, the employer is not liable for the penalty for waiting time during the time the cause is pending in the courts for final determination."

*Claus v. DeVere,* 120 Neb. 812, 235 N. W. 450. The case at bar does present a reasonable controversy between the employer and employee. In fact, it presents a situation that has never before been before this court. The trial court properly denied the penalty asked for.

In view of the conclusion reached, it is not necessary to consider other assignments of error set out in the briefs. We conclude that the judgment of the trial court was in all respects correct. An attorney fee of $100 is allowed plaintiff's attorneys for presenting the case in this court.

AFFIRMED.