LLOYD BRONSON, APPELLEE, V. CITY OF FREMONT ET AL.,
APPELLANTS.

9 N. W.. (2d) 218

FILED APRIL 23, 1943. No. 31593.

*Abbott, Dunlap & Abbott* and *Fred H. Richards, Jr.,* for appellants.

*Robins & Yost, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CARTER, J.

This is an action to recover benefits under the workmen's compensation law. The trial court entered an award for plaintiff and defendants appeal.

Plaintiff was employed by the city of Fremont as an electric power lineman. On October 3, 1941, while practicing safety methods in removing and resuscitating a man who might be injured while working on a pole, plaintiff's climbing spurs slipped and he fell approximately 12 feet. He landed on his feet and received injuries which resulted in

flat feet in both members. No injuries are alleged except to the feet. His wages at the time of the accident were $35.77 each week. It is conceded by the parties that plaintiff received his injuries as a result of an accident arising out of and in the course of his employment. The only issue is the measure of compensation for permanent partial disability.

Plaintiff contends that although his disability falls within subdivision 3 of section 48-121, Comp. St. 1929, governing the total or partial loss of use or function of specific members, he should be permitted an additional percentage of loss of normal use and function of his feet because of his subsequent inability to carry on his former occupation. Defendants contend that the percentage of disability for total or partial loss of specific members under subdivision 3 is controlled solely by the percentage of loss of normal use or function of the member or members and is unaffected by the fact that he is unable to perform any part or all of the work theretofore done by him. The trial court adopted plaintiff's theory and awarded benefits for permanent partial disability of 50 per cent.

The medical testimony does not conflict to any great extent. The testimony of Dr. C. G. Moore is that plaintiff has a functional disability of both feet of 20 to 25 per cent. and a 100 per cent. disability as to pole climbing. Dr. George A. Haslam testified that the ordinary functional use of plaintiff's feet was reduced from 20 to 30 per cent. by the injury and that he was totally incapacitated from climbing poles. Dr. Herman F. Johnson testifies that plaintiff has a disability of 35 per cent. in the right foot and of 40 per cent. in the left. He also testifies that plaintiff is totally disabled from pole climbing. We conclude from this evidence that plaintiff is totally disabled from climbing poles and that he has a permanent partial disability of 33 1/3 per cent. of the ordinary functional use of his feet. Under such state of facts we are called upon to determine the proper award of benefits under the act.

A claimant for compensation under subdivision 3 of sec-

tion 48-121, Comp. St. 1929, who through an injury has suffered a permanent partial loss of the use or function of both feet, is entitled to recover such proportion of the compensation allowed for total disability under subdivision 1 of said section as the extent of his loss would bear to the total loss of such members. *Johnson v. David Cole Creamery Co.*, 109 Neb. 707, 192 N. W. 127; *Huff v. Omaha Cold Storage Co.*, 136 Neb. 907, 287 N. W. 764. It was clearly the intent of the legislature in establishing a schedule of benefits for the specific injuries listed in subdivision 3 to fix the amount of such benefits without regard to the extent of the subsequent disability with respect to the particular work or industry in which the employee was engaged at the time of his injury. *Carlson v. Condon-Kiewit Co.*, 135 Neb. 587, 283 N. W. 220. Consequently, the compensation for permanent partial loss of the use and function of both feet, unaccompanied by other physical injury, cannot exceed the amount specified in subdivision 3. *Hull v. United States Fidelity & Guaranty Co.*, 102 Neb. 246, 166 N. W. 628. In such case it is immaterial whether an industrial disability is present or not. *Schmidt v. City of Lincoln*, 137 Neb. 546, 290 N. W. 250.

Plaintiff bases his whole case on *Fallis v. Vogel*, 137 Neb. 598, 290 N. W. 461, particularly upon the statements contained in the second point of the syllabus reading as follows: "And where temporary total disability is followed by permanent partial disability, and the same is determined at the end of the 67th week and fixed to the extent of 25 per cent. of the ability of the employee to carry on his former occupation, such employee should receive 25 per cent. of 66 2/3 per cent. of the weekly wage." The foregoing quotation from the syllabus of the *Fallis* case is clearly an erroneous statement of the law when applied to subdivision 3. The correct rule was stated in the first paragraph of the syllabus of that case and in the cases hereinbefore cited in this opinion. The ability or nonability of the claimant to carry on his former occupation is immaterial in determining the benefits due for an injury listed in subdivision

3 of section 48-121. We therefore disapprove that part of the second paragraph of the syllabus of the *Fallis* case which we have hereinbefore quoted.

Plaintiff is entitled to an award of benefits as follows: $15 each week for a period of 15 weeks from and after October 3, 1941, for temporary total disability, less $225 paid thereon by defendants; $7.94 each week for a 33 1/3 per cent. partial permanent disability for 285 weeks commencing on January 16, 1942; and $5.36 each week thereafter for the remainder of plaintiff's life.

Defendants contend that the allowance of an attorney's fee of $350 in the district court was improper. We agree, in view of the conclusion herein reached, that the allowance cannot be sustained. Where an employer appeals to the district court and fails to obtain a reduction of the award of the compensation court, the employee is entitled to an allowance of an attorney's fee. But where, on appeal to the supreme court, it is determined that the award of the district court was erroneous and that a decree reducing the award of the compensation court should have been entered, the allowance of the attorney's fee is also erroneous.

The decree of the district court is therefore reversed and judgment entered in this court in accordance with this opinion.

REVERSED.

MESSMORE, J., concurring.

The rule as announced in the opinion is the one required in applying subdivision 3, sec. 48-121, Comp. St. 1929, as indicated by the decisions cited therein. The Nebraska workmen's compensation law is a separate, independent act, having as its fundamental purpose a fixed schedule of disability benefits for an employee for the loss of a member, or loss of use or function of a member, of his body, brought about by an accident arising out of and in the course of his employment. The underlying purpose is to fix the industrial disability of the injured employee.

In the instant case Bronson's vocation was that of a lineman. He had been trained in this field and was an efficient

employee. Due to the accident resulting in his injury in the course of his employment, he can no longer carry on the very work for which he was trained and the vocation which he followed. His industrial loss in the field where he is most efficient is greater than the loss or disability provided for in the schedule; that is, subdivision 3, sec. 48-121, Comp. St. 1929. In fact, in applying the language of this subdivision, his industrial loss is not a matter that is given consideration in the awarding of compensation benefits.

It is my opinion that subdivision 3, sec. 48-121, Comp. St. 1929, is inequitable, in that it fails to take this essential element into consideration in determining compensation benefits. As a concrete example: A technician, who, by excellent eyesight and a keen sense of touch and with dexterity of hands and fingers, works with precision instruments and intricate mechanisms, loses an eye in the course of his employment. As a result, he is totally and permanently disabled from carrying on the vocation in which he was trained. Considering subdivision 3 as it now exists, its benefits are determined by a hard and fast schedule that gives no consideration to his industrial loss. As far as the workman is concerned, the rule is harsh and unfair. In many kindred cases, the result is just as inequitable.

I submit that the degree of disability should, to some extent at least, be based upon the industrial loss to the employee, and that the legislature should take cognizance of this fundamental and essential element which has heretofore been totally ignored, in so far as injuries arising under subdivision 3, sec. 48-121, *supra,* are concerned. It is our obligation to follow the plain wording of the statute. In my judgment, the subject herein discussed should be given further legislative consideration, in order that the beneficent purposes of the act may be more commensurate with the industrial disability sustained.