CARL HALER, JR., APPELLEE, V. GERING BEAN COMPANY
ET AL., APPELLANTS.

81 N. W. 2d 152

Filed February 15, 1957. No. 34045.

Jack E. Lyman and Marvin L. Holscher, for appellants.

Townsend & Youmans, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a workmen's compensation case appealed from the district court for Scotts Bluff County. Appellee, Carl Haler, Jr., originally filed a petition in the Nebraska Workmen's Compensation Court stating that while he was employed as a common laborer by the appellants Gering Bean Company and Ted Baum Company he received, on or about February 19, 1952, personal injuries arising out of an accident that happened in the course of that employment. He therein set forth the extent of the injuries sustained and then asked for such relief as, under the provisions of the workmen's compensation law, he might be entitled to by reason thereof. Under his prayer appellee was entitled to receive whatever relief the facts established would entitle him to under the compensation law. As this court has often stated: "The applicable rule of construction is that the Workmen's Compensation Act is to be construed liberally so that its beneficent purposes may not be thwarted by technical refinement of interpretation." Franzen v. Blakley, 155 Neb. 621, 52 N. W. 2d 833.

The claim was tried to a judge of the compensation court who found for appellee and awarded him the following relief: The sum of $26 per week for a period of 85-3/7 weeks, the sum of $15 per week for 214-4/7 weeks, and thereafter the sum of $12 per week for the

balance of his life, credit being given for payments already made. Appellant The Fidelity and Casualty Company of New York is the workmen's compensation carrier for appellee's employers.

Appellants thereupon waived rehearing before the compensation court and appealed directly to the district court for Scotts Bluff County, that being the county in which the accident happened. Trial was had in the district court and the trial judge thereof found that appellee had been totally and permanently disabled as a result of injuries suffered from the accident and awarded him, because thereof, $26 per week for 300 weeks commencing on February 19, 1952, and $20 per week for the rest of his life. Since appellee had been paid $26 per week for the period from February 19, 1952, to August 18, 1953, totalling $2,028, the appellants were given credit for that amount. In addition thereto appellants were ordered to pay to Dr. S. P. Wiley the sum of $531 and an attorney's fee of $500.

Appellants filed a motion for new trial and, from the overruling thereof, perfected this appeal. The action is for review here de novo.

The evidence shows that immediately prior to and on February 18, 1952, appellee was employed by both appellants Gering Bean Company and Ted Baum Company as a common laborer; that on that date, while stooped over scooping beans, a stack of 100-pound bags of beans beside which he was working accidentally fell over onto him striking him first in the middle of his back; that he was completely covered thereby; and that, as a result thereof, he was seriously injured. It is conceded by all the parties that plaintiff received his injuries as a result of an accident arising out of and in the course of his employment and that, at the time, his average weekly compensation was $48.

Dr. S. P. Wiley of Scottsbluff, who attended and examined appellee on February 19, 1952, in the West Nebraska Methodist Hospital in Scottsbluff, diagnosed his

injuries to be as follows: An oblique comminuted fracture in front of the middle and upper two-thirds of the tibia and fibula of the right leg with the bones angulated in an outward direction at the fracture site and an extensive obliquely running comminuted fracture involving the distal half of the femur of the left leg. There was also a posterior displacement of the proximal end of the distal fragment and some posterior angulation through the fracture region as well as mild media angulation and a superficial laceration of the scalp, which took some 9 stitches to close.

Dr. Wiley testified he treated these fractures by the insertion of pins above and below the fracture sites and with pins and traction and later casted.

Appellee was released from the hospital on July 7, 1952, but was required to use crutches so the legs would not bear too much of his weight. On October 28, 1952, while still on crutches, appellee was examined by Dr. Samuel P. Newman in his office in Denver, Colorado. Dr. Newman's diagnosis of appellee at that time establishes there was a malunion of the fracture of his right tibia and fibula and the same of the lower third of his left femur. Appellee thereafter entered a Denver hospital and, on December 4, 1952, Dr. Newman operated on his right leg and endeavored to straighten it by rebreaking the tibia and then fastening the ends thereof at the break by a bone graft. Following this surgery a full-length leg cast was applied to this leg and he was allowed to leave the hospital on December 22, 1952, doing so on crutches which he continued to use for some 3 months thereafter.

The principal question raised by the appeal relates to the basis upon which appellee can recover. It is appellants' thought that appellee is limited to the provisions of subdivision (3) of section 48-121, R. R. S. 1943, because of the parts of his body which were injured, that is, the left leg and right foot. We shall discuss the

various provisions of this statute as they have application here.

Subdivision (1) of section 48-121, R. R. S. 1943, insofar as here material, provides in cases of total disability that: "For the first three hundred weeks of total disability, the compensation shall be sixty-six and two-thirds per cent of the wages received at the time of injury, but such compensation shall not be more than twenty-six dollars per week, nor less than fifteen dollars per week; Provided, that, if at the time of injury, the employee receives wages of less than fifteen dollars per week, then he shall receive the full amount of such wages per week as compensation. After the first three hundred weeks of total disability, for the remainder of the life of the employee, he shall receive forty-five per cent of the wages received at the time of injury, but the compensation shall not be more than twenty dollars per week nor less than twelve dollars per week; Provided, that if at the time of the injury the employee receives wages of less than twelve dollars per week, then he shall receive the full amount of such wages as compensation."

Subdivision (2) of section 48-121, R. R. S. 1943, insofar as here material, provides, in case of partial disability, that: "For disability partial in character, except the particular cases mentioned in subdivision (3) of this section, the compensation shall be sixty-six and two-thirds per cent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter, but such compensation shall not be more than twenty-six dollars per week. This compensation shall be paid during the period of such partial disability, but not beyond three hundred weeks after the date of the accident causing disability."

Under these provisions we have said:

"For workmen's compensation purposes, 'total disability' does not mean a state of absolute helplessness, but means disablement of an employee to earn wages

in the same kind of work, or work of a similar nature, that he was trained for, or accustomed to perform, or any other kind of work which a person of his mentality and attainments could do." Elliott v. Gooch Feed Mill Co., 147 Neb. 309, 23 N. W. 2d 262. See, also, Elliott v. Gooch Feed Mill Co., 147 Neb. 612, 24 N. W. 2d 561; Franzen v. Blakley, *supra.*

"A workman who, solely because of his injury, is unable to perform or to obtain any substantial amount of labor, either in his particular line of work, or in any other for which he would be fitted except for the injury, is totally disabled within the meaning of the workmen's compensation law." Elliott v. Gooch Feed Mill Co., 147 Neb. 309, 23 N. W. 2d 262. See, also, Franzen v. Blakley, *supra.*

Subdivision (3) of section 48-121, R. R. S. 1943, insofar as here material, provides, in case of two member disability, as follows: "The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof, shall constitute total and permanent disability and be compensated for according to the provisions of subdivision (1) of this section. Amputation between the elbow and the wrist shall be considered as the equivalent of the loss of a hand, and amputation between the knee and the ankle shall be considered as the equivalent of the loss of a foot. Amputation at or above the elbow shall be considered as the loss of an arm, and amputation at or above the knee shall be considered as the loss of a leg. Permanent total loss of the use of a finger, hand, arm, foot, leg, or eye shall be considered as the equivalent of the loss of such finger, hand, arm, foot, leg, or eye. In all cases involving a permanent partial loss of the use or function of any of the members mentioned in this subdivision, the compensation shall bear such relation to the amounts named in said subdivision as the disabilities bear to those produced by the injuries named therein."

In applying a factual situation coming specifically

within this section we have limited the right of recovery strictly to the amounts therein provided regardless of the extent to which the injuries may affect the employee's subsequent ability to carry on the particular work in which he was engaged at the time of the injury. As stated in Bronson v. City of Fremont, 143 Neb. 281, 9 N. W. 2d 218: "A claimant for compensation under subdivision 3 of section 48-121, Comp. St. 1929, who through an injury has suffered a permanent partial loss of the use or function of both feet, is entitled to recover such proportion of the compensation allowed for total disability under subdivision 1 of said section as the extent of his loss would bear to the total loss of such members. Johnson v. David Cole Creamery Co., 109 Neb. 707, 192 N. W. 127; Huff v. Omaha Cold Storage Co., 136 Neb. 907, 287 N. W. 764. It was clearly the intent of the Legislature in establishing a schedule of benefits for the specific injuries listed in subdivision 3 to fix the amount of such benefits without regard to the extent of the subsequent disability with respect to the particular work or industry in which the employee was engaged at the time of his injury. Carlson v. Condon-Kiewit Co., 135 Neb. 587, 283 N. W. 220. Consequently, the compensation for permanent partial loss of the use and function of both feet, unaccompanied by other physical injury, cannot exceed the amount specified in subdivision 3. Hull v. United States Fidelity & Guaranty Co., 102 Neb. 246, 166 N. W. 628. In such case it is immaterial whether an industrial disability is present or not. Schmidt v. City of Lincoln, 137 Neb. 546, 290 N. W. 250."

And, as stated in Ottens v. Western Contracting Co., 139 Neb. 78, 296 N. W. 431: "There can hardly be any question that if it be determined that the disability of which appellant complains, if it be found to exist, is a normal, usual, logical and expected consequence of the injury to the fingers, then no compensation may be awarded in addition to that provided by the statutory

schedule. Hull v. United States Fidelity & Guaranty Co., 102 Neb. 246, 166 N. W. 628; Johnson v. David Cole Creamery Co., 109 Neb. 707, 192 N. W. 127; Schroeder v. Holt County, 113 Neb. 736, 204 N. W. 815; Greseck v. Farmers Union Elevator Co., 123 Neb. 755, 243 N. W. 898." See, also, Carlson v. Condon-Kiewit Co., 135 Neb. 587, 283 N. W. 220.

However, as also held in Ottens v. Western Contracting Co., *supra*, where an employee has suffered a schedule injury to some particular member and some unusual and extraordinary condition affecting some other member has developed as a result of the accident an increased award is proper and should be made to cover such additional disability.

We think this is not only true as to some other member but to any part of the body and that the following from Dowling v. Church E. Gates & Co., 253 N. Y. 108, 170 N. E. 511, cited with approval in Ottens v. Western Contracting Co., *supra*, states this principle very clearly:

"A claimant who has suffered a schedule injury covered by subdivision 3 of section 15 is entitled only to an award of the amount specified in the schedule for such injury in case the effect of the injury is the usual and expected effect. If, however, some unusual and extraordinary condition develops as a result of the injury the fact that the original injury is covered by the schedule does not prevent an award for the actual, although unusual and unexpected, condition which has developed as a result of the accident. The amputation of a foot may result in blood poisoning, paralysis or death. They are not the usual results of the injury and operation, although they may be the natural and unavoidable results in particular cases. When such an unusual and unexpected result occurs, an increased award should be made.

"The determination must depend upon the facts in each case. If the facts establish that a claimant is suffering

from a serious, unusual and unexpected condition as the result of a schedule injury, he is entitled to an award greater than that provided for such schedule injury. If the condition is the usual and expected result of the injury, the award must be limited to the schedule amount." See, also, Nebraska National Guard v. Morgan, 112 Neb. 432, 199 N. W. 557.

As stated in Nebraska National Guard v. Morgan, *supra:* "The argument is that, inasmuch as the injury was to the leg only, claimant is not entitled to greater compensation than he would have been if the leg had been amputated. We cannot adopt this conclusion. While the only direct result was a fracture of the surgical neck of the femur, the evidence establishes the facts that the injury left broken ends of bone in the hip of the claimant resulting in a malplacement of the hip bone against the pelvic bone, causing irritation of the nerves coming into the hip and affecting the whole physical and nervous system in such manner as to totally disable the claimant from doing any work. The district court found that the plaintiff was suffering from total disability, and such finding is amply sustained by the evidence." This is comparable to the situation here.

The medical witnesses of appellee, including that of Dr. Wiley who has attended appellee at all times except when treated by Dr. Newman in Denver, testify to the effect that there was a malunion or abnormal alignment of the bones at the site of the fractures and a shortening thereof caused by compression and twisting resulting from the accident. They place the shortening between the right knee and ankle at 3 centimeters or about 1.1811 inches and that of the left leg between the thigh and knee at 1 centimeter or about .3937 of an inch. This shortening and malalignment, they state, resulted in faulty locomotion and changed the weight-bearing plane of appellant's body, thus materially affecting his back and resulted in material changes therein.

These witnesses also testified appellee more or less

constantly suffers pain in his back, especially on movement; that he has marked tenderness in the region of the fifth lumbar and first sacral vertebra; that he loses his balance easily; that he has a twisting of his spine to a limited extent; and that the normal curvature of his back has disappeared. These conditions of his back are permanent, except that they may become worse, and have caused him to become totally unfit to engage in hard manual labor. We do not think these conditions of the back were the usual and ordinary results to be expected from the injury to his legs.

Appellee testified he was 33 years of age at the time of the accident; that prior thereto he had been in good health and always able to work; that his education was very limited; that he could not read or write; that he had always performed hard manual labor; and that there was nothing else he could do. He further testified that since the accident he has not been physically able to work because any movement causes him to have severe pain, principally in his back. He further testified the condition of his back has limited his ability to lift, walk, run, climb ladders, walk up stairs, or stand still; and that he loses his balance easily, fatigues quickly, and has generally lost his agility.

We think the facts fully establish that the appellee is totally disabled within the meaning of the Workmen's Compensation Act. We recognize that the medical experts of the appellants testified to the contrary and they, and another witness of appellants, left the impression that appellee is feigning his condition and that he is a malingerer. In this respect we have taken into consideration the fact that the trial judge heard the witnesses, saw appellee, and came to the conclusion that he was not. We come to the same conclusion.

Appellants also contend that the minimum provisions of the compensation law relative to total disability do not apply to permanent partial disability of multiple members. While that question has no significance here

we think it has been fully decided, contrary to appellants' contention, in Paulsen v. City of Lincoln, 156 Neb. 702, 57 N. W. 2d 666.

Appellants also contend the trial court erred in entering judgment allowing Dr. Wiley the sum of $531 for the services he rendered to appellee in connection with the injuries he suffered as a result of the accident. When Dr. Wiley was on the witness stand he did not have with him an itemized statement of his account, which it is stipulated has not been paid, but testified the amount thereof was the reasonable value of the services he had rendered appellee and within the limits of the Workmen's Compensation Act. Later, when the itemized statement was offered in evidence, appellants' counsel reserved the right to make objection thereto and the trial court gave him 10 days for that purpose. No objections were ever made. Consequently, the statement should have been received and we shall so consider it. We think the record fully supports the allowance.

Appellants also raise the question of the authority of the trial court to allow appellee an attorney's fee and of our doing so. The Workmen's Compensation Act provides: "In the event the employer appeals to the district court from the award of the compensation court, or any judge thereof, and fails to obtain any reduction in the amount of such award, the district court may allow the employee a reasonable attorney's fee to be taxed as costs against the employer, and the Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in that court." § 48-125, R. R. S. 1943.

We have held: "Where an employer appeals to the district court and fails to obtain a reduction of the award of the compensation court, the employee is entitled to an allowance of an attorney's fee. But where, on appeal to the supreme court, it is determined that the award of the district court was erroneous and that a decree reducing the award of the compensation court should have

been entered, the allowance of the attorney's fee is also erroneous." Bronson v. City of Fremont, *supra*.

In view of our holding herein, which affirms the judgment of the district court, we find it was proper for the trial court to allow appellee an attorney's fee and that we should do likewise. Considering the questions raised and the amount involved we think appellee is entitled to an attorney's fee for services of his counsel in this court of $350, same to be taxed as costs.

AFFIRMED.