LEE M. MILLER, APPELLEE, v. ROSS A. PETERSON, DOING BUSINESS AS ROSS FLORISTS, APPELLANT.

85 N. W. 2d 700

Filed November 1, 1957. No. 34244.

Cassem, Tierney, Adams, Kennedy & Henatsch, for appellant.

Hammes & Hammes, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a workmen's compensation case. The trial court awarded the plaintiff the sum of $28 per week for 238 weeks commencing on June 30, 1955, and $22 per week thereafter for the remainder of the life of the plaintiff for total and permanent disability. The defendant was ordered to pay a doctor bill in the amount of $893.69 and a hospital bill in the amount of $1,065.80. The defendant has appealed from the decree thus entered.

The appellee has filed a motion to dismiss the appeal for the reason that a transcript was not filed in this court within 30 days from the entry of the judgment in the district court. In support of this proposition the case of Dobesh v. Associated Asphalt Contractors, 137 Neb. 1, 288 N. W. 32, is cited. We point out that at the time that case was decided the filing of a transcript within 30 days was a jurisdictional act under the general law regulating appeals to this court. Since the adoption of Laws 1941, chapter 32, sections 1 and 2, pages 141 and 142, now sections 25-1912 and 25-1914, R. R. S. 1943, jurisdiction of an appeal is obtained by this court by the filing of a notice of appeal in the office of the clerk of the district court and depositing therein

the docket fee required by law. No other acts are required to lodge jurisdiction of an appeal in this court. Fick v. Herman, 161 Neb. 110, 72 N. W. 2d 598. Under section 25-1912, R. R. S. 1943, as amended by Laws 1947, chapter 87, and section 48-185, R. S. Supp., 1953, the filing of a transcript within 30 days became an official duty of the clerk of the district court. When the filing of the transcript is the duty of a public officer, a dereliction of duty by such officer will not prejudice the rights of a party to the litigation. In re Estate of Tagart, 119 Neb. 647, 230 N. W. 492; In re Estate of House, 144 Neb. 870, 15 N. W. 2d 56. The motion of appellee to dismiss the appeal is therefore without merit.

The appellant contends that an appeal to the district court after a rehearing before the compensation court en banc is in the nature of an error proceeding, and the district court is without authority in such a case to disturb questions of fact supported by evidence. The previous holdings of this court support this contention. Solheim v. Hastings Housing Co., 151 Neb. 264, 37 N. W. 2d 212, and cases therein cited. Even though the district court is so limited, an appeal therefrom to this court is considered de novo upon the record. Werner v. Nebraska Power Co., 149 Neb. 408, 31 N. W. 2d 315. Under such circumstances the manner in which the district court considered the case is of little concern. Whether or not the trial court properly considered the controlling issues, the case is here de novo for all practical purposes. While the situation is an anomalous one, it has long been the rule. Since the case is reviewed here de novo, the appellant has not been prejudiced by any misconception on the part of the trial court as to its duty with respect thereto in disposing of the case in that court. The contention of the appellant indicates no prejudice as to him and for that reason his assignment of error with respect thereto is not well taken.

The appellee, plaintiff below, was employed by the defendant as a carpenter. He was 60 years of age and in good health, except as hereinafter noted. On April 22, 1954, he suffered an injury' arising out of and in the course of his employment. The only question presented by this appeal is the amount of compensation to which he is entitled.

At the time of the accident he was engaged in the construction of an additional room at the rear of defendant's place of business. While so engaged he leaned against a stair railing which gave way. Plaintiff fell approximately 16 feet to the ground. He sustained a double fracture of the sternum and a tearing of the brachial plexus in the region of the left armpit. It is asserted, also, that he sustained compression fractures of the third and fourth thoracic vertebrae which increased a preexisting kyphosis (rounded or hunched back) and added to his disability. The evidence shows an increased lipping of the vertebrae, particularly in the lumbar area, indicating arthritis of the spine alleged to have been increased by the trauma. The evidence shows that the brachial plexus resulted in an injury to the ulnar nerve and a consequent atrophy of certain muscles of the forearm and hand. There is evidence of continued numbness of the left hand, particularly of the two little fingers. There is evidence of inability to close the left fist and a three-fourths weakness of the left hand as a whole. Plaintiff's physician testified that there was injury to the soft parts of the cervical region which has resulted in a permanent limitation of about 25 percent of the lateral movement of his neck and almost a complete fixation in the forward and backward movements of the neck. There is evidence that the compression fractures of the spine have limited the movement of the spine in turning and twisting, and that this condition will become more pronounced with the lapse of time. There is evidence of adhesions of the shoulder joint, resulting in an immobilization of the

left arm at the scapula. The left arm can be raised to a 45 degree angle as compared with the normal 180 degrees. The abduction and circumduction of the arm is seriously restricted.

There is evidence that while taking physical therapy treatments in the hospital, plaintiff suffered what is referred to as a cardiac episode. It was believed that he had suffered a coronary heart attack. A physician specializing in internal medicine was called into the case. No evidence of a coronary heart attack was found. Electrocardiograms failed to disclose an existing coronary heart condition, or evidence that one had occurred. The physician testified that periarthritis of the shoulder and ulnar nerve damage are frequently mistaken for a cardiac condition. We think the evidence sustains a finding that the alleged cardiac episode was not a coronary heart attack, and was in fact a result of the injuries resulting from the accident.

The plaintiff stated that he had a moderate kyphosis before the accident. He stated that he was always able to work, up until that time, but has never been able to work since. There is evidence by an employer of carpenters that plaintiff could not work as a carpenter because of this physical condition, that insurance carriers would frown upon it, and that contractors would not hire him, although carpenters were in demand.

The evidence shows that a carpenter is required to work with both hands. He must be able to stoop, and work on his stomach and on his back. He must be able to work with both hands above his head, move his neck, and twist his body in numerous positions. Much of the work is heavy, requiring a strong back and body. Plaintiff has only an eighth grade education and had worked as a carpenter for 36 years preceding the accident. He has had no other training.

The physicians who testified in the case appear to agree there is nothing more that can be done to better plaintiff's condition. Dr. Murray, plaintiff's attending

physician, said that plaintiff is totally and permanently disabled. Dr. Hamsa, a recognized orthopedist physician, gave the plaintiff a permanent partial disability rating of 25 percent as a working man and declined to rate his disability as a carpenter. Dr. Browne, a neurosurgeon, estimated that plaintiff had a 25 percent permanent partial disability without relating it to any particular type of work. The plaintiff testified that the kyphosis did not interfere with his work prior to the accident and that he did not know that any arthritic condition existed prior to that time.

The facts do not bring the case within subdivision (3) of section 48-121, R. S. Supp., 1953. Haler v. Gering Bean Co., 163 Neb. 748, 81 N. W. 2d 152. The primary question is whether the disability is total or partial. This court has consistently held that a workman who is unable to perform or to obtain any substantial amount of labor, solely because of the accident and resulting injury, either in his particular line of work or in any other for which he is fitted, is totally disabled within the meaning of the workmen's compensation law. Elliott v. Gooch Feed Mill Co., 147 Neb. 309, 23 N. W. 2d 262; Haler v. Gering Bean Co., *supra.*

We conclude from the evidence herein set forth that the plaintiff is totally disabled within the meaning of the workmen's compensation law. He has suffered an injury to his left arm which has most seriously limited its movement and reduced its strength. He has a periarthritis of the left shoulder which not only immobilizes the arm at the shoulder joint but subjects the plaintiff to pain when he attempts to use it. He has a limitation of the lateral movement of the neck and a fixation which prevents the forward and backward movements of the neck. Due to the compression fractures of the spine, he has a very limited movement in twisting and turning.

There is no evidence in the record that plaintiff can perform any of the major duties required of a carpenter,

or one engaged in similar work. Plaintiff said he is unable to work. He has not worked from April 22, 1954, to the date of the trial in the compensation court on June 21, 1956. No one testified that he was able to work during this period, and no contention that plaintiff was a malingerer is advanced. There is some evidence that plaintiff was not cooperative with the physicians on the case, but there is medical testimony to the effect that he developed an apprehensiveness following the cardiac episode that could have been the cause. There is no evidence in this record by any physician that plaintiff could perform the work of a carpenter, or similar work, at the time of the trial or at any foreseeable time in the future. There is undisputed evidence in this record that, although carpenter work is in demand, it is not available to the plaintiff because of his condition. That plaintiff's injuries are permanent is not questioned. The record shows that plaintiff is unable to obtain or perform the work of a carpenter, or similar work for which he is fitted. He is therefore totally and permanently disabled.

The defendant argues that this court should give consideration to the fact that the compensation court saw the witnesses and heard them testify. He contends also that Drs. Hamsa and Browne are recognized experts in their respective fields and that this court should hesitate before refusing to accept their findings.

There seems to be an assumption that the ratio of functional loss, or loss from the medical viewpoint, is the same as loss of earning capacity or wage loss. If this were so it would be quite immaterial in what occupation an injured workman was engaged and to what extent he was unable to perform it or similar work because of his injury. Disability under subdivisions (1) and (2) of section 48-121, R. S. Supp., 1953, refers to loss of earning capacity and not to functional or medical loss alone. Castle v. City of Stillwater, 235 Minn. 502, 51 N. W. 2d 370, is a case very similar both as to

facts and principle to the one before us. In that case two physicians fixed the functional disability of the employee as 25 percent and 30 percent. A third physician stated that the employee was totally and permanently disabled from earning a living. A finding of permanent total disability was sustained, the court saying: "Thus, in defining total disability, losses in bodily function are not important in themselves, but are only important insofar as they relate to ability to earn an income."

The record shows that Drs. Hamsa and Browne did not relate the functional disability of the employee to the work of a carpenter or other similar work which he could have done except for the injury. The basis for a finding of partial disability in earning capacity as contemplated by the workmen's compensation law was not laid and the testimony of these two physicians does not go to the primary issue in the case. The compensation court apparently accepted the evidence of Drs. Hamsa and Browne as evidence of the disability contemplated by subdivisions (1) and (2) of section 48-121, R. S. Supp., 1953, when it does not in fact directly relate to that question. Under such a situation it is not necessary for us in a trial de novo to question the competency or reliability of these two physicians in determining that the plaintiff was totally and permanently disabled.

The defendant urges that he is under no obligation to pay certain medical and hospital bills which were incurred because of the cardiac episode incident. Since it is established that the employee did not sustain a coronary heart attack and that the episode resulted from the injury sustained in the accident, such expenses are properly chargeable to the defendant.

The decree of the trial court awarded compensation for total and permanent disability. It conforms to our findings on a de novo hearing. We therefore affirm the judgment of the trial court. An attorney's fee of $500

is awarded the appellee for services of legal counsel rendered in this court.

AFFIRMED.

YEAGER, J., participating on briefs.