KENNETH NORDAHL, APPELLANT AND CROSS-APPELLEE, V. GORDON A. ERICKSON ET AL., APPELLEES AND CROSS-APPELLANTS.

116 N. W. 2d 275

Filed July 13, 1962. No. 35264.

Kanouff & Brown, for appellant.

Cline, Williams, Wright, Johnson, Oldfather & Thompson, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SIMMONS, C. J.

This is a workmen's compensation case. The plaintiff sought a permanent total disability award. The one-man compensation court awarded a 45 percent permanent partial disability to the right foot. Plaintiff refused to accept the award and had a hearing before the Workmen's Compensation Court, en banc. There he received an award of 45 percent permanent partial disability of his right foot, an award for the loss of a small toe on the left foot, and a 12 percent permanent partial disability to his body as a whole.

Plaintiff took the matter to the district court where, under our procedure, it became an error proceeding. Defendants cross-appealed, praying that the order of the compensation court be set aside. The district court found no error in the decision of the compensation court and dismissed both the appeals of the plaintiff and defendants.

Plaintiff appeals here where, under our procedure, the matter is for trial de novo on the record made before the compensation court. Defendants cross-appealed.

In effect, the plaintiff contends here, as he has throughout, that he is entitled to permanent total disability under the provisions of section 48-121 (1), R. R. S. 1943. Defendants, in effect contend for an award under the provisions of section 48-121 (3), R. R. S. 1943, and for the right foot only.

We find that the plaintiff is entitled to an award of permanent total disability. We reverse the judgment

of the trial court and remand the cause with directions to enter an award in accord with this opinion.

Plaintiff, at the time of the accident, was about 36 years of age. He was married and the father of two children whose ages are not shown. He weighed about 200 pounds. He quit school in the 10th or 11th grade. He was born and raised on a farm. All his life he had engaged in hard physical labor for a livelihood.

There is no suggestion in this case that plaintiff is malingering.

The accident here involved occurred September 3, 1958. Up until about 2 years prior thereto, he had lived and worked on a farm, first as a laborer, then in some sort of partnership with his mother. After marriage, he rented a farm and farmed for himself.

Twenty years or more, before this accident, he had broken a bone in the small toe of his left foot. It resulted in a "hammertoe." It, in no sense, was disabling. He also had had some lower back trouble for which he was examined at Mayo's some years before this accident. It was not disabling. It is not involved here.

Somewhere in this period, he and his family inherited a farm of 200 acres of which about 100 acres was pasture land and about 100 acres tillable land. The plaintiff's interest in the farm or whether it was owned free from encumbrance is not shown.

About 2 years before this accident, plaintiff quit farming and engaged in common labor in the construction industry. At the time of the accident, he was working as a carpenter, cement finisher, and anything they wanted him to do. He was working at the top of a grain elevator and above a shaft which was rectangular in shape and about 20 x 27 inches in dimension. The shaft was 180 feet high. Beneath it was an open space of some 18 feet to a concrete floor which at the time had debris of construction material on it.

A ladder on which plaintiff was standing worked loose and plaintiff fell, feet downward, the entire length

of the shaft and open area beneath. His size was such that he about fitted the shaft. He was able to slacken his fall by body and limb pressures on the sides. He was at all times fully conscious. He first struck the concrete floor on his feet, then his buttocks, and then his back. His body had multiple abrasions of the skin, particularly on his arms and legs from contact with the walls of the shaft. With the exception of his right hand, they do not enter into the problem here.

In view of the fact that the question here is whether he had a single permanent injury to the right foot or multiple injuries causing permanent injury to his body as a whole, we discuss each injury separately.

The physician and surgeon who cared for plaintiff throughout became defendants' expert witness.

Plaintiff's right ankle was obviously smashed as a result of the impact. Efforts were made to restore it and finally, after two or more operations, it was fixed permanently immobile. There is no dispute about that, neither is there dispute that his right leg is three-quarters of an inch shorter than the left. It is the above injury for which defendants admit liability under the provisions of section 48-121 (3), R. R. S. 1943, as a scheduled injury.

In addition to the above, plaintiff's expert witness testified that there was a "marked atrophy of the muscles of his right leg." This was not limited to a below the knee situation and we do not find it denied by defendants' expert witness.

The other of plaintiff's expert witnesses testified that plaintiff, in such movements as getting down on his legs, was awkward and there was some weakness or loss of co-ordination of the right side. He illustrated this by reference to his ability in getting down to replace "a nut in a machine or anything like that."

Defendants' witness makes no reference to this testimony and was not asked.

When doing work, plaintiff wears a steel brace from

his shoe to the right knee, as prescribed by defendants' expert witness.

We go now to the left foot. At the time of his first examination, the surgeon found a moderate swelling of the left foot with complaint of tenderness over the dorsum of the foot and some tenderness of the hammer toe. Shortly after the accident, the surgeon operated on and removed a bone from the hammer toe and found "probability" of reinjury to it in the accident. He testified, however, that he performed the operation as a favor to the plaintiff and undertook as a witness for defendants to remove injury to the left foot from plaintiff's disabilities caused by the accident. However, the surgeon prescribed, and plaintiff wears, an arch support on his shoe under the instep of his left foot.

Plaintiff testified that he could not walk barefoot in the house without pain in both feet. When he walks at all with a shoe on, he does so with the weight put on the big toe and heel of the left foot, to avoid pain.

As to the use of his feet, the undisputed evidence is that plaintiff could not stand on his feet for more than 10 minutes without pain often followed by edema. Walking, particularly on rough sufaces, about the farmyard is a constant source of pain and danger.

Plaintiff's right hand, and particularly the index finger, received the worst of the abrasions in the fall. No bones were broken. The testimony is that plaintiff's right hand has lost some of its strength, there is a numb area in the heel of the hand, and misplacement of bones in the wrist. Plaintiff has complained to the doctors of pain in that wrist every time he uses it, and concededly, it has a restricted use. There is also some evidence of pain in the right arm area. Plaintiff is a right-handed man.

At the time of his first examination, plaintiff complained of tenderness throughout his back. He has continuously complained of tenderness in his upper back between his shoulder blades and in his neck. We will

make further reference to this in connection with his use of a farm tractor.

He can neither lift nor carry articles of much weight.

Such then is the present condition of a man who, prior to this accident, could do the hardest of hard common labor, and, in his own language, there were few who could follow him. Defendants would have us find that he has only a permanent injury to his right ankle.

We have no difficulty in finding that he has a disability to his body as a whole. Plaintiff's expert witness so testified. In a report to the insurance carrier, defendants' expert witness so stated. The divergence of views here seems to be that plaintiff's expert witnesses find subjective symptoms of pain and disability, whereas defendants' witness undertook to limit his ratings to objective symptoms only.

Plaintiff's expert witness fixed the disability to the body as a whole as a 25 percent permanent partial disability. The question then arises as to how much compensation plaintiff is entitled.

We have held: "Disability under section 48-121, R. S. Supp., 1953, subdivisions (1) and (2), is defined by our statute in terms of employability and earning capacity rather than in terms of loss of bodily function. * * * In defining total disability, losses in bodily function are not important in themselves but are only important insofar as they relate to earning capacity and the loss thereof." Miller v. Peterson, 165 Neb. 344, 85 N. W. 2d 700.

As we stated the question in Pavel v. Hughes Brothers, Inc., 167 Neb. 727, 94 N. W. 2d 492: "What, then, is the evidence as to plaintiff's ability to perform labor and to earn an income in his particular line of work or in any other for which he is fitted?"

There is no contention here that plaintiff is employable as a common laborer, carpenter, or cement finisher, being the work in which he was engaged when injured.

The defendants contend here that plaintiff is a trained, experienced farmer and can do that work. This is not

based upon any evidence of employability as a farm hand. He operates a farm, owned by himself and family and, apparently, had done so in the years 1960-1961. The evidence is that it is not a profitable operation because of the necessity of employing labor. His herd of cattle has increased from 25 to 70, with no evidence as to whether they are encumbered or free from debt. The sole evidence as to plaintiff's activity in this regard is that he, apparently, accompanies some shipments of cattle to the market at Omaha and sells them.

Plaintiff's wife and children do the chores, attend the cattle, and work in the fields. At the time of this hearing in July 1961, plaintiff was employing four hired men.

Plaintiff's tillable ground is devoted to row crops, partly irrigated. Some of the work in connection with it is done by tractor. Defendants stress the testimony of plaintiff that he did about 75 percent of the tractor work in 1961 and less in 1960. But that is not the whole story. The question is as to how and to what extent, he was able to do it. The undisputed testimony is that he could drive the tractor for 2 or 3 hours and then was required to rest. He was unable to use his right foot in manipulating the tractor brake, etc. He sat sideways when that was necessary and did the foot work with his left foot. If he was pulling a following implement requiring that he look back and turn to do so, he immediately had pain in his neck and upper back, and sometimes a locking of the neck. The amount of work which plaintiff was able to perform in hours, days, or seasons is not shown. There is no showing of employability as a farm laborer except insofar as he works for himself, when able, and to the extent above-shown. On occasion, where necessity required, he would sometimes work as many as 8 hours a day with the tractor, followed by spending the next day in the house.

We think the evidence shows that plaintiff is not employable.

Our comment in Elliott v. Gooch Feed Mill Co., 147 Neb. 309, 23 N. W. 2d 262, is applicable: "He is, therefore, what is called an 'odd lot' man, the nondescript in the labor market, with which industry has little patience, and rarely hires. Work, if he finds any that he can do, is casual and intermittent. He is utterly unable to do the work he did before this accident. Under these facts, we think we are justified in finding that in his present handicapped condition he is entitled to an award for total disability under the Nebraska Compensation Act."

We quoted from the above case in Rapp v. Hale, 170 Neb. 620, 103 N. W. 2d 851, as follows: "'For workmen's compensation purposes, "total disability" does not mean a state of absolute helplessness, but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he was trained for, or accustomed to perform, or any other kind of work which a person of his mentality and attainments could do. * * * A workman who, solely because of his injury, is unable to perform or to obtain any substantial amount of labor, either in his particular line of work, or in any other for which he would be fitted except for the injury, is totally disabled within the meaning of the workmen's compensation law.'"

We find that plaintiff is permanently and totally disabled and entitled to compensation as such under the provisions of section 48-121 (1), R. R. S. 1943.

We do not undertake to tabulate the period of the beginning of compensation payments. We anticipate that the parties will be able to do that without difficulty.

The judgment of the trial court is accordingly reversed and the cause remanded with directions to enter judgment in accord with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., dissenting.

I do not agree that the record in this case sustains a finding that plaintiff was totally and permanently dis-

abled. The case involves schedule injuries and other claimed injuries to other members, and a further contention of permanent injury to the body as a whole.

We have few cases in this state in which the relation of a schedule injury to injury to the body as a whole has been considered. The opinion of the majority appears deficient in the consideration of this problem.

The plaintiff sustained an injury to his right foot which, standing alone, would be compensated for as a schedule injury as defined in subdivision (3) of section 48-121, R. R. S. 1943. There is no medical evidence in the record that the injury to the right foot constituted more than 40 to 50 percent permanent disability of the right foot.

The evidence shows that plaintiff's physician removed a hammertoe from his left foot which was a condition that did not result from the accident. There was some evidence of injury to the top of the left foot. Examination by X-ray showed no fracture, but revealed an arthritic condition which had developed over a period of time before the accident, No objective symptoms of injury to the left foot were found. No doctor testified as to any amount of permanent disability to the left foot.

There was evidence of some injury to the right wrist. An orthopedic physician testified that the distal end of the ulna lies dorsal-ward from the usual relationship with the radius. There was no evidence of fracture. There is medical evidence that this condition is occasionally seen as a natural development in a normal wrist. There is no medical evidence that the wrist condition was the result of the accident and plaintiff's doctor made no separate permanent disability rating as to the right hand and wrist. In fact, the medical experts considered the condition of the right wrist of no importance.

Plaintiff asserts that he suffered injury to his back. He was treated at the Mayo Clinic for lower back discomfort in February 1958, prior to the accident. No objective evidence of traumatic injury to the back was

found and no doctor attempted to fix any percentage of permanent injury to the back or to the body as a whole resulting from the claimed back injury. There was evidence of tenderness in the shoulder blade and dorsal spine area. The medical evidence is that this was caused by an osteoarthritic condition and the use of crutches during the period of convalescence, without any indication of permanency. There is some medical evidence that plaintiff would suffer pain in his back in the future. The disability from such pain is not rated nor is there medical evidence that it was the result of the accident.

I think the provision of subdivision (3) of section 48-121, R. R. S. 1943, providing total and permanent disability for the loss of two feet means a complete loss of use of such two members. What then if one or both members under subdivision (3) have not been injured to the extent of permanent total loss of use. Under such circumstances I think the rule stated in Radford v. Smith Bros., 123 Neb. 13, 241 N. W. 753, applies. The announced rule in that case is that a claimant for compensation who has sustained injury to both legs and both hands is entitled to recover such proportion of compensation allowed for total disability as the extent of loss of the several members bears to the total loss of two such members. See, also, Frost v. United States Fidelity & Guaranty Co., 109 Neb. 161, 190 N. W. 208; Johnson v. David Cole Creamery Co., 109 Neb. 707, 192 N. W. 127; Schlesselman v. Travelers Ins Co., 112 Neb. 332, 199 N. W. 498; Ashton v. Blue River Power Co., 117 Neb. 661, 222 N. W. 42. Under the foregoing rule the plaintiff is entitled to recover permanent partial disability benefits under subdivision (1) in the proportion that the extent of his loss to such members would bear to the total loss of two such members.

A traumatic injury to the back resulting from the accident would raise a question that we do not have before us, as I view the evidence. There is no evidence that the back injury was caused by the accident, al-

though it is one that could well have been lighted up by the accident in view of its nature. The evidence of back injury was subjective only. No objective symptoms were found, other than the preexisting osteoarthritic condition previously mentioned. An injury to a back based only on the complaints of pain by the claimant should not be accepted as proven in the absence of medical support. Magnolia Pipe Line Co. v. Smith, 167 Okl. 316, 29 P. 2d 569.

There is no medical proof that the claimed injury to the right wrist or to the back was the result of the accident and, what is more important still, there is no medical proof that such injuries result in any disability chargeable to the accident. The burden of proof is on plaintiff to prove these facts. The plaintiff testifies that he was able to do 20 percent of his tractor work in his farming operations during the first year following the accident and that he was able to do 75 percent of it the second year. This is a clear indication of physical improvement and a confirmation of the medical evidence finding partial permanent disability only. As I view the record, the case should be determined as a two-member injury requiring an award of partial permanent disability under the rule announced in Radford v. Smith Bros., *supra,* and other cases announcing the rule of that case.

The Workmen's Compensation Act provides that the loss of use of two feet shall constitute total and permanent disability and shall be compensated for according to the provisions of subdivision (1) of section 48-121, R. R. S. 1943. It does not authorize the granting of total permanent disability where the use of one or both injured members are not wholly disabled. This court has held on many occasions that it is immaterial whether or not industrial disability is present in a schedule injury. Bronson v. City of Fremont, 143 Neb. 281, 9 N. W. 2d 218. Since the competent evidence before the court in the present case relates to the injury of two

schedule members, the matter of industrial loss and employability is not material. Paulsen v. Martin-Nebraska Co., 147 Neb. 1012, 26 N. W. 2d 11. The plaintiff is therefore entitled to an award of permanent partial disability calculated under the rule of Radford v. Smith Bros., *supra*. See, also, Paulsen v. City of Lincoln, 156 Neb. 872, 58 N. W. 2d 336. The failure of the majority to apply the rule of that case affords the basis of this dissent.

Assuming a compensable injury to the back, a basis for an additional award exists. A 40 to 50 percent disability of the right foot, a lesser unrated disability to the left foot, and an unrated disability to the back based on subjective symptoms not supported by medical evidence do not in my opinion support a finding of permanent total disability.